**FIRST TRUST CO. OF ST. PAUL et al. v.
COUNTY BOARD OF EDUCATION OF
WHITLEY COUNTY, KY.**

District Court, E. D. Kentucky.

Sept. 8, 1933.

50

Alfred Holman, of Cincinnati, Ohio, for plaintiff.

Tye, Siler, Gillis & Siler, of Williamsburg, Ky., for defendants.

ANDREW M. J. COCHRAN, District Judge.

This suit is before me on final hearing and for decree. The relief sought is the removal of a cloud on plaintiffs' title to sixteen interest-bearing bonds for $1,000 each, amounting in all to $16,000, dated December 1, 1929, and due $5,000 December 1, 1945; $5,000 December 1, 1946; and $6,000 December 1, 1947, issued and sold by defendant December 30, 1929, to Magnus & Co. of Cincinnati, Ohio, for $16,026.27, principal and interest to that date paid to the defendant's treasurer. The plaintiffs, citizens of Minnesota, purchased same, for value, without notice of any defect therein. The cloud complained of is the denial on the part of the defendant that the bonds are valid. That equity has jurisdiction of such a suit was decided in Thompson v. Emmett Irrigation District (C. C. A.) 227 F. 560. That it has jurisdiction of a suit to remove a cloud on title to personal property was held in Chicago Auditorium Ass'n v. Willing (C. C. A.) 20 F. (2d) 837. The decision was reversed by the Supreme Court in Willing v. Chicago Auditorium Ass'n, 277 U. S. 274, 48 S. Ct. 507, 72 L. Ed. 880, on the ground that the cloud complained of was not in fact a cloud.

The defense to the suit is that the bonds are invalid. It is claimed that such is the case on two grounds. One is that defendant had no authority to issue them. The other is that it did not in fact authorize the issuance. The basis of the latter defense is that there is no record evidence of its having so authorized. Section 4399a-5, Ky. St., required it to keep a record of its transactions in a book furnished by the state board of education. In County Board of Education v. Durham, 198 Ky. 733, 249 S. W. 1028, 1029, it was said: "The governing body of a municipal corporation can speak only through its records. It can confer authority to make contracts only by proper proceedings had at a meeting regularly called and held for that purpose and where its acts and proceedings are duly recorded."

The defendant has a record book so furnished. It keeps in it minutes of its meetings and transactions and there is not recorded in it any reference whatever to the issuance and sale of these bonds. It is shown, however, by the evidence that a meeting was regularly held November 23, 1929, all members of defendant being present, and that at that meeting the issuance and sale of the bonds was authorized by them. Minutes of the meeting were prepared by the purchasers, written on a typewriter on loose sheets of paper, and were duly signed. These sheets of paper were attached to the record book with a slip-on paper clip. They in some way became detached and are missing. But certified copies thereof were made at the time and introduced in evidence. I think that what was done was a sufficient compliance with the requirement that authority to issue and sell the bonds must have been shown by record evidence.

The other defense calls for a more detailed consideration. The bonds were issued to fund an existing floating indebtedness of the defendant. That indebtedness was represented by its notes held as follows:

First National Bank of Williamsburg, dated June 4, 1927 ....... $5,000.00
First National Bank of Williamsburg, dated April 2, 1928 ...... 6,000.00
Bank of Williamsburg, dated Sept. 10, 1929 ..................... 2,000.00
First National Bank of Williamsburg, dated October 25, 1929 ... 3,000.00

Total ..................... $16,000.00

The proceeds of the bonds were applied to their payment. The contention of defendant is twofold. There was no authority to incur this indebtedness. If there was, there was none to fund it. Whitley county is a taxing district for school purpose, and the defendant is its arm through which it operates its schools. As such taxing district it is a municipality in the thought of the Constitution of this state. It will first be considered whether, assuming the indebtedness to

have been valid, the defendant had authority to fund it. To determine this question an understanding should be arrived at as to the authority of municipalities generally to fund their valid floating indebtedness. This depends on sections 157 and 158 of the State Constitution. Section 157 is in these words: "The tax rate of cities, towns, counties, taxing districts and other municipalities, for other than school purposes, shall not, at any time, exceed the following rates upon the value of the taxable property therein, viz: For all towns or cities having a population of fifteen thousand or more, one dollar and fifty cents ($1.50) on the hundred dollars ($100.-00); for all towns or cities having less than fifteen thousand and not less than ten thousand, one dollar on the hundred dollars ($100.00); for all towns or cities having less than ten thousand, seventy-five cents (75¢) on the one hundred dollars ($100.00); and for counties and taxing districts, fifty cents (50¢) on the hundred dollars ($100.00); unless it should be necessary to enable such city, town, county, or taxing district to pay the interest on, and provide a sinking fund for the extinction of indebtedness contracted before the adoption of this Constitution. No county, town, city, taxing district, or other municipality, shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforceable by the person with whom made; nor shall such municipality ever be authorized to assume the same."

Section 158 is in these words: "The respective cities, towns, counties, taxing districts and municipalities shall not be authorized or permitted to incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding the following named maximum percentages on the value of the taxable property therein, to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness, viz: Cities of the first and second classes, and of the third class having a population exceeding fifteen thousand, ten per centum (10%); cities of the third class having a population of less than fifteen thousand, and cities and towns of the fourth class, five per centum (5%); cities and towns of the fifth and sixth classes, three per centum (3%);

and counties, taxing districts and other municipalities, two per centum (2%): Provided, Any city, town, county, taxing district or other municipality may contract an indebtedness in excess of such limitations when the same has been authorized under laws in force prior to the adoption of this Constitution, or when necessary for the completion of and payment for a public improvement undertaken and not completed and paid for at the time of the adoption of this Constitution: And provided further, If, at the time of the adoption of this Constitution, the aggregate indebtedness, bonded or floating, of any city, town, county, taxing district or other municipality, including that which it has been or may be authorized to contract as herein provided, shall exceed the limit herein prescribed, then no such city or town shall be authorized or permitted to increase its indebtedness in an amount exceeding two per centum (2%), and no such county, taxing district or other municipality, in an amount exceeding one per centum (1%), in the aggregate upon the value of the taxable property therein, to be ascertained as herein provided, until the aggregate of its indebtedness shall have been reduced below the limit herein fixed, and thereafter it shall not exceed the limit, unless in case of emergency, the public health or safety should so require. Nothing herein shall prevent the issue of renewal bonds, or bonds to fund the floating indebtedness of any city, town, county, taxing district or other municipality."

Section 157 consists of three sentences and section 158 of two. The question under consideration has to do with the second sentence of the one, and the last or second sentence of the other. The first sentence of section 157 relates to the rate of taxation which a municipality may prescribe, and the first sentence of section 158 to the limit of indebtedness which it may incur. The first sentence of neither section has any bearing thereon, save as it may aid in the interpretation of what follows in the section. The second sentence of section 157 calls for interpretation first, and then the second or last sentence of section 158. They should be interpreted in this order. One is not equipped to interpret the latter until he has mastered the former. The third or last sentence of section 157 calls for no consideration. The second sentence of section 157 covers more than it expresses. All that it expresses is a prohibition against a municipality being authorized to incur indebtedness in any year in excess of the "income and revenue provided for such year"

without a vote. It implies a number of other things, each of which is as much a part of the provision as the prohibition which it expresses. One is that a municipality can be authorized to incur an indebtedness in any year not in excess of such income and revenue without a vote. It does not grant power to the Legislature to authorize its incurrence. It does no more than recognize that it has such power, and refrains from prohibiting it. The Legislature is not dependent on section 157 therefor. Not being prohibited from granting such power, it has it. The authority which the Legislature may so grant, however, is limited to an indebtedness not in such excess. This being the case, the implication is that the indebtedness is to be paid out of such income and revenue. It cannot be carried over into the next year. Why so limit the indebtedness if it is not the intent that it be so paid? There follows from this the further implication that a municipality cannot be empowered to and it cannot contract to pay the debt beyond the year in which it is incurred. It must be payable in that year and out of such income and revenue when received. It cannot be postponed to a subsequent year, and the income and revenue of that year subjected to its payment. But its payment may have to be so postponed or the indebtedness go unpaid. This may happen if the anticipated income and revenue does not materialize, which may result to a certain extent from an inability to collect it, or it may result from default on the part of the collecting officer or the officer to whom same is paid and inability to collect it from either officer or his sureties. But payment may have to be postponed even though the income and revenue is collected and there is no default. This may happen if the municipality disregards its duty to apply the same in payment of the indebtedness and applies it otherwise. If for either reason the indebtedness remains unpaid at the end of the year, what happens? The indebtedness is not invalidated by reason thereof. It is still to be paid; but when? Inasmuch as the section on its face knows of no other payment than out of the income and revenue for the year in which it was incurred, it must necessarily be taken that the intention is that it be paid out of the income and revenue for the next year. It cannot be postponed beyond that year. That the provision on its face does not contemplate such a contingency indicates that the thought was that the contingency could not arise if the municipal body exercised the proper care and did its duty. But this does not exhaust the implications of the provision. There is still one more. Apparently an indebtedness can be authorized to be incurred without a vote to the full extent of the income and revenue for the year. This cannot be. The municipality has to operate, and a certain portion of its income and revenue is needed to enable it to do so. It follows that no indebtedness can be authorized to be incurred in excess of so much of the income and revenue as may be left after paying governmental expenses, without a vote.

The sum and substance, therefore, of what has thus been put forth is that the provision in question permits the Legislature to authorize a municipality to incur an indebtedness without a vote equal to the amount of its income and revenue for the year which will be left after paying governmental expenses; such indebtedness to be paid out of the income and revenue for that year. It cannot authorize the payment of such indebtedness out of the income and revenue of a subsequent year. If by reason of any of the happenings heretofore referred to it is not paid out of the income and revenue for the year in which it was incurred, it must be paid out of that for the next year. The only possible contingency in which its payment can be postponed beyond the year in which it has been incurred is the happening of nonpayment in either of the ways suggested, and then its payment cannot be postponed beyond the next year. It follows from this that if at the end of a given year an indebtedness incurred during that year, which is valid in that it did not exceed the portion of the income and revenue for the year applicable to its payment, remains unpaid, the municipality cannot contract to pay it beyond the next year. It must be paid out of the income and revenue of that year.

The whole matter can be put in another way. The provision contemplates and requires that without a vote a municipality shall do business on a cash basis. It shall always live within its means. It must pay as it goes. This sticks out of the provision and is as plain as the nose on one's face. The Court of Appeals of Kentucky did not have occasion to think out the full contents of this provision until over a quarter of a century after the adoption of the Constitution. It first did so in the case of McCrocklin v. Nelson County Fiscal Court, 174 Ky. 308, 192 S. W. 494, 499, decided in 1917. By its opinion therein it interpreted the provision aright. This case came before one of its judges upon an appeal from an order dissolving a preliminary injunction against the issuance of certain bonds by the defendant and appellee,

Nelson county. The order was reversed and the injunction reinstated. All the judges of the court heard the case, and concurred in the opinion. On its return to the lower court a final hearing was had and injunction decreed. From this the county appealed, and the appellate court affirmed the decree. Nelson County Fiscal Court v. McCrocklin, 175 Ky. 199, 194 S. W. 323, 326. In its opinion therein it adhered to the position taken on the former appeal. It is in order to make extensive quotations from these two opinions. In the first opinion it was said: "We have repeatedly held that the object of the provisions contained in the sections referred to [sections 157 and 158 of the Constitution] is to protect the people from their own improvidence, and that of their officers."

Again: "It is our conclusion therefore that the controlling idea in section 157, Constitution, is that a county shall not create or contract in any year any indebtedness that cannot be paid out of its revenue and income for that year; and that it is not contemplated by the Constitution that a county shall, without a vote of the people, create in one year a debt to be thereafter paid in subsequent years, and for the payment of which no provision can be made out of the income and revenue provided for the year in which the indebtedness is created; and, moreover, that in any year all the outstanding valid indebtedness of the municipality, not created with the assent of two-thirds of the voters thereof, must be taken into consideration in determining whether in that year the municipality becomes indebted, in any manner or for any purpose, to an amount exceeding the income and revenue provided for the year. There is little or no reason why every county should not observe this rule, because its fiscal court can tell within a few hundred dollars, at least, the amount that will be collected each year, by way of revenue, by comparison with the collections of the previous year or years."

Again: "The law as well as good business methods would seem to require that the fiscal court should not create debts in anticipation that the full amount of revenue would be collected. In other words, in creating debts it should make allowance for a loss of such a percentage of the revenue, from failure to collect, as will keep the expenditures for the year reasonably well within the amount of the revenue actually collected."

Again: "If, however, in good faith, a county does, in anticipation of its proper revenue, create debts in excess of what it collects, this surplus debt must be carried as a debt to the next year, and succeeding years until paid, and must be taken account of as an indebtedness of that year, and succeeding years, until paid, in exactly the same manner as if the carried-over debt was created in the year to which it was carried. This is clearly the meaning of section 157."

Again: "Under this constitutional rule there is no authority for fiscal courts to issue bonds payable in 2, 10, or 20 years, because a debt created in one year must be paid in that year, or, if not, in the next year."

And again: "If a fiscal court may issue bonds to take care of a deficit in one year, it can do the same the next year, and so on, as long as it may choose, without limit. The result would be that, in the course of a few years, counties would have large bonded debts, perhaps as much as $50,000 or $100,000, without the sanction of a vote of the people."

The opinion on the second appeal was directed mainly to the question whether an indebtedness could be incurred without a vote equal to the entire revenue and income for the year, or only to the excess thereof over and above the governmental expenses of the year. There was some uncertainty on this subject in previous decisions of the court. It was held that it could be incurred only to an amount equal to such excess. The court said: "Section 157 of the Constitution was intended to protect the people from the extravagance or recklessness of their officials in whom is lodged the power to levy taxes, such as fiscal courts, city councils, and the like, and these taxing authorities have no jurisdiction or authority to create in any year an indebtedness that cannot be paid out of the income and revenue of that year after there has been deducted therefrom a sum sufficient to satisfy the necessary fixed or current expenses of the county."

Again: "It will not be difficult for fiscal courts disposed to observe the constitutional limitations as we have described them to follow these rules, because the amount needed to defray the current or fixed charges of the county can be estimated at the beginning of each year with reasonable certainty based on the volume of such expenses for the preceding year, to which there should, of course, be added the amount of such other necessary expenses in the maintenance of public buildings and public institutions as the fiscal court sees proper to expend during the year; and the amount that can be realized from the income, and revenue of the county can likewise be estimated with reasonable certainty based on the income and revenue of the preceding

year. Possibly in some years fiscal courts, acting in good faith and with the purpose not to violate the Constitution, might create a debt that could not on account of some unexpected or unanticipated cause be paid out of the revenue of the year; but if a condition like this should arise, which under good management ought not to be often, the indebtedness remaining unpaid must be carried over and paid out of the next year."

And again: "This section [157] lays down certain mandatory rules that fiscal courts, city councils, and other taxing authorities must observe. It is so plainly written and so easily understood that there is no room for two opinions about its meaning."

These decisions were cited with approval in the following cases, to wit: City of Winchester v. Nelson, 175 Ky. 63, 193 S. W. 1040; Carman v. Hickman County, 185 Ky. 630, 215 S. W. 408; Buford v. Jessamine County, 189 Ky. 277, 224 S. W. 769; Wesley v. Tartar, 197 Ky. 493, 247 S. W. 353; Tartar v. Wesley, 200 Ky. 14, 252 S. W. 109; Pulaski County v. Richardson, 225 Ky. 556, 9 S.W.(2d) 523.

They seem to have a like constitutional or statutory provision in Missouri. In the case of Holloway v. Howell County, 240 Mo. 601, 144 S. W. 860, 862, it was said: "The theory of our present system of county government is that counties must run their business affairs on the 'cash system.' Decker v. Diemer, 229 Mo. 296, loc. cit. 330, 129 S. W. 936. Running in debt is easy and pleasant while it lasts. Paying is 'another story.' The pleasure of debt making is denied by law to Missouri counties. They can anticipate their revenue, but only for the current year."

On the other hand there are a dozen recent decisions of the Kentucky Court of Appeals which run counter to those in the Nelson County Cases in one particular. That particular is as to whether a municipality can fund a floating indebtedness which is valid in that when incurred it was not in excess of the income and revenue for the year applicable to its payment but which for some reason was not paid out of same, can be funded, i. e., can have its payment extended beyond the next year. These decisions are to the effect that it can be. This, as we have seen, is contrary to our interpretation of section 157 and to the decisions in the two Nelson County Cases. They began in 1927 about ten years after the decisions in the Nelson County Cases and have been rendered in the last seven years. They are as follows: Vaughn v. City of Corbin, 217 Ky. 521, 289 S. W. 1104; Wilson v.

City of Covington, 220 Ky. 795, 295 S. W. 1069; Wilson v. City of Covington, 220 Ky. 798, 295 S. W. 1068; Davis v. City of Newport, 224 Ky. 546, 6 S.W.(2d) 693; Baker v. Rockcastle County Court, 225 Ky. 99, 7 S.W.(2d) 846; Welch v. City of Nicholasville, 225 Ky. 312, 8 S.W.(2d) 400; Rowland v. City of Paris, 227 Ky. 570, 13 S.W.(2d) 791; Hogan v. Lee County Fiscal Court, 235 Ky. 100, 29 S.W.(2d) 611, 614; City of Frankfort v. Fuss, 235 Ky. 143, 29 S.W.(2d) 603; Elliott v. Fiscal Court of Pike County, 237 Ky. 797, 36 S.W.(2d) 619, 621; Pace v. City of Paducah, 241 Ky. 568, 44 S.W.(2d) 574, 575; Bond v. City of Corbin, 241 Ky. 663, 44 S.W.(2d) 576, 577.

The municipality involved in these cases was either a city or county. In no one of them was a school taxing district involved. Whether those decisions apply to such a municipality is passed for the time being. Before taking this up something is to be said about these decisions. In the City of Frankfort Case, a vigorous dissent was entered to the position taken in them by three of the seven judges of the court. There is no indication when this dissent arose. It was not mentioned until then. In the City of Paducah Case, the minority gave in to the majority, not because of change of conviction, but because it was conceded to be useless to dissent further. The court, in its opinion, written by Judge Rees, one of the dissenters, said: "Beginning with City of Frankfort v. Fuss, supra, Chief Justice Thomas, Judge Dietzman, and the writer of this opinion, have consistently registered their dissent from the majority view approving the ruling in the Vaughn Case, and have maintained that the opinion in that case is unsound and should be overruled. Their views on the question will be found in the dissenting opinion in City of Frankfort v. Fuss, supra, and they are of the opinion that section 1 of chapter 68, Acts of 1892, now section 3077, Kentucky Statutes, is strongly persuasive of the correctness of the views therein expressed. They have those convictions now, but in view of the numerous opinions in which the Vaughn Case has been followed and approved, they deem it to be the better policy to consider the question as definitely settled in accordance with the rule announced in that case, in order to allay all doubt as to the validity of bonds which have been, or may be, issued by a municipality for the purpose of funding a valid floating indebtedness."

The position taken in these decisions is based on the second or last sentence of sec-

tion 158 of the Constitution, which is in these words: "Nothing herein shall prevent the issue of renewal bonds, or bonds to fund the floating indebtedness of any city, town, county, taxing district or other municipality."

In none of the opinions of the court in these cases before that in the Lee County Case was mention made of the decisions in the Nelson County Cases. In the Pike County Case the court said that the Nelson County Cases "appear to have ignored the concluding provision of section 158 of the Constitution." It cannot be said that they ignored section 158, for in the first one express reference was made thereto. The fact that it did not refer to its concluding sentence specifically does not indicate that it did not have that sentence in mind in what it said in regard to the section. But there was a real ignoring by the court in these later decisions. Section 157 was wholly ignored. In no one of them was it considered as having any bearing on the question involved. The cases called not only for its consideration, but for its consideration before taking up the concluding sentence of section 158. Section 157 comes before section 158. It has to do solely with the creation of indebtedness, whereas the concluding sentence of section 158 is limited to the renewal or refunding of indebtedness. One is not equipped to interpret that sentence until he has first come to terms with section 157. According to the interpretation which I have made of that section, which is the interpretation put on it in the Nelson County Cases, it requires that an indebtedness properly incurred without a vote, in that it was not in excess of the income and revenue provided for the year in which it was incurred above governmental expenses which for some reason is not paid out of that income and revenue and remains valid notwithstanding its nonpayment, shall be paid out of the income and revenue for the next year. It constitutes a part of the budget of that year. Such being the case, its payment cannot be postponed beyond that year. It cannot be funded. If, then, the concluding sentence of section 158 is interpreted as authorizing the funding of such indebtedness, it is brought into direct conflict with section 157. To give that sentence effect it is not necessary to make it apply thereto. It can have application without so doing. It can apply to bonded or floating indebtedness of a municipality existing at the time of the adoption of the Constitution. On its face such is its significance. It was inserted in the section to make sure that a renewal of the one or a funding of the other

would not be affected by the limitations prescribed in the first sentence. It does not grant power to renew or to fund. It assumes that such power continues to exist, and merely adds that its exercise is not prohibited by such limitation. The construction placed upon the concluding sentence of section 158 in these decisions may be described as a nullification of section 157 in its requirement that an indebtedness which it permits to be incurred without a vote shall be paid in that or the succeeding year. The case of Knipper v. City of Covington, 109 Ky. 157, 58 S. W. 498, 499, involved, as the court expressed it, an attempted "nullification" of the requirement of section 157 that no indebtedness in excess of the current income and revenue shall be incurred without a vote. The court refused to nullify it. It said: "The first section, in plain and unambiguous language, provides a barrier against any indebtedness for any purpose, without a vote, beyond the revenues of the year. The second section is not a grant of power beyond this, but imposes an additional limitation on the creation of indebtedness in the aggregate."

It said also: "Each section provides a limitation on the power to create indebtedness. Neither of them is a grant of power."

And it said further: "We therefore must give each section full effect, and apply the limitation provided for in each of them."

According to the construction of such sentence in these twelve decisions, it, though negative in phraseology, contains an express grant of power to fund a floating indebtedness which according to the requirement of section 157 cannot be funded.

In the Lee County Case, where first mention was made in this line of cases of the Nelson County Cases, the court first stated the position taken therein in these words: "Any valid indebtedness carried over from one year into another must be taken into consideration in ascertaining the indebtedness which the county may incur in the succeeding year. The outstanding valid indebtedness at the end of a year must be deducted from the revenue of a county for the succeeding year under these opinions, and the county may then contract debts only equal in amount to the remainder after the deduction. These opinions likewise held that fixed charges, such as salaries and other governmental expenses, must be treated as an indebtedness in determining the amount of debts which may be contracted."

This is a correct statement of the positions

so taken, except in one particular. The court did not say that the fixed charges should be treated as an indebtedness. What it said was that in determining what indebtedness the municipality may incur without a vote so much of the income and revenue as was necessary to pay such charges is not to be considered. Apparently an indebtedness may be incurred to the full extent of the income and revenue. But this is not so. An indebtedness may be incurred only to the extent of the excess thereof over such charges.

After making this statement of the position taken in the Nelson County Cases, the court proceeded as follows: "That means that when the aggregate of the valid outstanding floating indebtedness becomes greater than the revenues of the county for the year, the county is without power to function at all."

But under those positions it is not possible for the aggregate of such indebtedness to be so great. In the very nature of things according to the conception of section 157 such an indebtedness can be very slight only. On its face the section does not contemplate that there will be any, inasmuch as it contemplates that the indebtedness incurred will be paid out of the current income and revenue. The only possibility of there being any indebtedness at all is in a mistake being made as to the income and revenue to be received, a default on the part of the collecting and receiving officers, or a deliberate violation of the section by the municipality in not applying the income and revenue applicable to the payment of the indebtedness thereto, but diverting it to other purposes. Even in the latter contingency the income and revenue for the next year over and above fixed charges should be sufficient to pay said indebtedness. As it was sufficient to meet the indebtedness in the year when incurred, there is no reason why it should not be sufficient in the next year. The sole effect of paying it out of the income and revenue for that year may be to leave nothing above what is necessary to pay fixed charges applicable to any other purpose. In no event will the county be without power to function at all. So much of the income and revenue as is necessary to pay fixed charges cannot be used in paying the indebtedness. It is applicable to the payment of such charges only. It is clear, therefore, that the court had an incorrect notion as to the effect of the positions taken in the Nelson County Cases, in thinking that under them the municipality may cease to function. Such is not the case. The sole effect of those positions

is to make the municipality pay as it goes and keep from becoming indebted beyond the next year without a vote. The court then said: "A way was provided by section 158 of the Constitution for a county to emerge from its difficulties when it found itself in such a condition. The closing sentence in section 158 authorizes a county to fund its floating indebtedness."

If a municipality lives up to the requirements of section 157 it will not find itself in such condition. There will be no difficulty for it to emerge from. The statement in the closing sentence that section 158 authorizes a county to fund its floating indebtedness is in direct conflict with the requirement of section 157 and in the teeth of the statement in the case of Knipper v. City of Covington, supra, that section 158 contains no grant of power. The court continued as follows: "When the two provisions of the Constitution, sections 157 and 158, are construed together, and it has always been the rule that they should be so construed, we find that a county may fund its floating indebtedness by the issuance of bonds. This means that an outstanding valid, floating indebtedness, which was created in a legal way and was valid at the time of its creation, may be funded, and when that is done the only thing which it is necessary to consider and charge up against the county in a current year is the amount of interest and the sinking fund that must be set apart to take care of the outstanding funded indebtedness."

Such is not a true construing of the sections together. It makes them fit, but it does so by nullifying the requirement of section 157, that if an indebtedness properly incurred without a vote, in that it is not in excess of the income and revenue for the year over and above fixed charges, is for some reason not paid out of such income and revenue, it shall be paid out of the income and revenue for the year over and above fixed charges, is for some reason not paid out of such income and revenue, it shall be paid out of the income and revenue for the next year. It nullifies it by making it so that it need not be so paid, but by funding its payment may be postponed for years. Construing the two sections together so as not to nullify any of the requirements of either is arrived at by viewing the concluding sentence of section 158 as not a grant of power to fund any indebtedness. It is simply a provision that the renewal of bonds or funding of a floating indebtedness existing at the time of the adoption of the Constitution will not be a creation of any in-

debtedness in excess of that to which a municipality is limited by the first sentence of the section. The two sections cannot otherwise be construed together. Space forbids the consideration in detail of each of these twelve decisions. It is not amiss, however, to analyze the first one, to wit, Vaughn v. City of Corbin, through which this discordant note crept into the decisions of the Court of Appeals, and bring out just how the position there taken came about. Corbin is a city of the third class. It had a floating indebtedness of $75,-000. The court held that it had power to fund this indebtedness by issuing 6 per cent. bonds payable, one-third in ten years, one-third in twenty years, and one-third in thirty years. It was based on two positions in regard to section 157, in support of which it cited previous decisions of the court. One was as to the rate of taxation which a municipality may levy under the first sentence of such section. It was that the municipality was not limited to the rate there prescribed. In addition thereto it may make a levy sufficient to pay the interest on and provide a sinking fund for the payment of the principal of indebtedness which under the second sentence has been favored by a two-thirds vote. Corbin had a right to levy not only the 75 cents authorized by the first sentence, but sufficient to make such provision for such indebtedness. The other was as to the indebtedness which a municipality may incur without a vote. It was not limited to the excess of the income and revenue provided by the levy actually made over and above governmental expenses. It could extend to the excess of the income and revenue which would have been provided by a levy to the full extent which it had power to make if the levy actually made was less than this. The soundness of this latter position, and that it is supported by the decisions cited, is accepted without reflection. The suit was brought under the Declaratory Judgment Act (Civ. Code Prac. § 639a—1 et seq.). The petition admitted that the $75,000 floating indebtedness proposed to be funded was valid. The city had for some years an outstanding bonded indebtedness created pursuant to a two-thirds vote. Its levy had been limited to 75 cents. No levy had been made to pay the interest on this bonded indebtedness and to provide a sinking fund for its payment which the municipality had a right to make in addition to the levy of 75 cents. The interest thereon had been paid and provision for the sinking fund had been made out of the 75 cents levy. This was not done purposely. The failure to make this additional levy was because it was not thought that the city had power to make it. It was thought that it was limited to the 75 cents. In the course of time the city was put to certain extraordinary expenses. Corbin is a railroad center. There was a prolonged railroad strike, and it had to spend and spent a very large amount of money in maintaining order. To protect the health of its citizens it had to enlarge its waterworks and build pits to dispose of its sewage. It had other extraordinary expenses besides those not specified. The amount of revenue yielded by the 75 cents tax was not sufficient to care for these extraordinary expenses in addition to the ordinary governmental expenses and caring for the bonded indebtedness. Hence resort was had to borrowing sufficient money to meet all expenses. The floating indebtedness of $75,000 thus incurred was not in excess of what would have been yielded had there been a levy during these years in addition to the 75 cents of a sufficient amount to care for the bonded indebtedness. The borrowing of this sum was not consciously against this additional levy. The city was not conscious that it had power to make it. But as a matter of fact it did not exceed such additional levy. It was in this way that the court conceived that the floating indebtedness was valid. To meet it the court conceived of but two alternatives. One was to make a single levy payable in one year or to fund it. It was contended against funding it that the first alternative should be pursued. The court stated this contention in these words: "It is insisted for the appellant that the city, having failed to make a sufficient levy as it should have done in the years that are past, ought now to make a levy for those years and pay off its indebtedness."

To this the court responded: "But this would impose upon the people of the city a very great burden in one year, for to raise $75,000 in one year, in addition to its otherwise necessary levy, would require a very heavy tax in a city of this size."

It said that such being the case only the question of power is presented.

The case, therefore, which the court had before it, as it conceived it, was how to provide for an indebtedness incurred by the city in ignorance of its right to raise the money by levy of a tax in addition to that which it actually levied and which it had the power to levy to care for the safety and health of its inhabitants, which could only be provided for in one or the other of the two ways stated. This was a hard case, and it is said that hard cases are sometimes the source of bad law.

It would seem that in providing for this indebtedness the city as an alternative to funding it was not limited to levying a tax payable in one year sufficient to pay it. No reason occurs why its payment could not be distributed over a number of years so as to lighten the burden of the taxpayer, beginning at once. By so doing the city would not be crippled in its operation. Its wings would simply have been clipped until the indebtedness was paid. By funding the indebtedness it could continue to soar as before. The power to fund was found by the court in the concluding sentence of section 158. Concerning this sentence the court said: "But it will be observed that bonds issued to fund the lawfully contracted floating indebtedness of any city are excepted out of the operation of that section."

The court concluded from this construction of that sentence as follows, to wit: "It results therefore that the city council has power to issue the $75,000 of bonds, although this may increase the bonded indebtedness of the city beyond the limit fixed in that section."

The section referred to is section 158. It is true that the concluding sentence of that section excepts out of its operations, i. e., the limitation prescribed by it, the funding of floating indebtedness, by which is meant such as has been "lawfully contracted." But to except such funding from such limitation does not confer power to fund. That must be found elsewhere in the thought of the sentence. As the court has said in the Knipper v. City of Covington Case, the section contains "no grant of power." And there can be no power to fund when it is prohibited by section 157. There was no possibility of the limitation prescribed by section 158 being exceeded by funding the $75,000 floating indebtedness. The sole trouble in the way was section 157, which did not occur to and was not considered by the court. There was no attempt made to come to terms with section 157, before construing the concluding sentence of section 158. In the court's thought that section had nothing to do with the question before it. The court concluded its opinion with this general statement: "When, in any year, a levy sufficient to cover necessary expenses incurred was not levied, the unpaid balance should have been provided for in the levy for the next year. But the failure to do this did not invalidate the debt, and the council had power then to fund this debt. This is true as to each succeeding year, and the power of the council to fund this debt exists now as it did at the end of each year and

may be exercised now at one time. There is no suggestion in the record that the excess of indebtedness now shown was not properly created under the constitutional provision. Its validity is conceded in the pleading. The issuing of bonds to fund a floating debt adds nothing to the indebtedness of the city. It merely changes the form of the existing debt. The power to fund a floating indebtedness is as broad as the power to incur such indebtedness."

This brings out the unusual character of this case, in that it involved a floating indebtedness incurred against a levy that might have been made, but was not. In all the other twelve cases the indebtedness held to be valid and capable of being funded was incurred against the levy actually made, which indebtedness was not paid out of the levy. Such is the case here. There is no distinction in principle between the two kinds of cases. If any indebtedness incurred against a levy not made can be funded, so can an indebtedness incurred against a levy made but not paid out of the levy. Hence the decision is an authority for funding an indebtedness in the latter kind of case and its reasoning is applicable thereto. This leads me to take note especially of this part of this quotation, to wit: "The issuing of bonds to fund a floating debt adds nothing to the indebtedness of the city. It merely changes the form of the existing debt."

This is undoubtedly true. But it does not follow from this that power to fund exists. The question is not whether funding increases the indebtedness. It does not. It is whether power to extend the time of payment of the indebtedness involved in funding exists. If it does, then power to fund may exist. If it does not, such power cannot exist. Power to extend time of payment and hence to fund an existing floating indebtedness valid in that it was properly incurred against a levy actually made but not paid out of such levy is prohibited by section 157, in that it requires same, if not paid out of such levy, to be paid out of the levy next year. Though funding a debt by a municipality does not increase its indebtedness, it enables it to increase it without a vote. It makes it so that it can so do. If it is bound to pay same out of current income and revenue its power to incur indebtedness without a vote until it is paid is curtailed. Take the case of the City of Corbin. After funding this $75,000 of floating indebtedness pursuant to the decision in that case, thereby postponing its payment from ten to thirty years, there was nothing to prevent its

repeating the incurrence of an indebtedness to this amount again without a vote, except the will of its city council. It could either refrain from levying the full tax it was authorized to levy, the same as before, and borrow against the tax not levied, or levy the full tax and borrow against the excess of the income and revenue thereby provided over governmental expenses and requirement of bonded indebtedness, refrain from paying same out of such excess and divert it to other purposes, and could keep this up for years, either funding the indebtedness at the end of each year or after a number of years, i. e., as long as it can hold its creditors off—all this without a vote. The only limit to its so doing would be the limitation prescribed by section 158. It is not true to say that the power to fund a floating indebtedness is as broad as the power to incur it. The power to incur indebtedness by a municipality without a vote is very limited under section 157. So far as what it says is concerned, it does not know of any such power. But the power to fund such indebtedness as it has power so to incur does not exist at all in that that section impliedly requires it to be paid out of the current income and revenue or that of the next year.

The statement above quoted from the opinion in this case, to the effect that funding a debt does not increase it, may be characterized as an epigram. It was quoted a number of times in the later decisions and seems to have been effective in bringing them about. This is an instance which warns one that epigrams are dangerous. As stated it is the decision in this case that brought the discord in the decisions of the Court of Appeals. In the last one, which was another Corbin Case, it is said: "The case of Vaughn v. City of Corbin, 217 Ky. 521, 289 S. W. 1104, is conclusive of this one. The opinion in the Vaughn Case has been approved in the following cases."

Then follows the ten cases between it and that case.

The position here advanced and taken in the Nelson County Cases is bottomed on the idea that section 157 impliedly prohibits the authorization of a municipality to fund a floating indebtedness which is valid in that it was properly incurred in anticipation of current income and revenue of that year. This it so does in that impliedly it requires same to be paid out of such income and revenue or that of the next year. If that idea is not sound, that position cannot be maintained. That it is sound is inescapable. Not prohibiting the authorization of the incurrence of an indebtedness not in excess of the income and revenue for the year of its incurrence over governmental expenses implies not only that it may be incurred, but that it is to be paid out of such income and revenue. On the face of the section the thought is that it can and will be paid out of it. It does not contemplate that it cannot or will not be so paid. If as a matter of fact it is not so paid, either because of a deficiency in collection, default, or a will not to pay, it must be taken that the implied requirement is that it shall be paid out of the income and revenue of the next year. It cannot be otherwise if the section is to be true to itself.

But as heretofore stated, these twelve decisions had to do with a municipality consisting of a city or county considered as a governmental unit. Neither one of them had to do with a municipality consisting of a taxing district within the meaning of those words as used in sections 157 and 158. It must be taken, however, that they apply to such a municipality which is like a city or county so considered which is operated solely by a single arm; the city by its counsel, and the county by its fiscal court, in that it too is operated by a single arm. There is no room to draw a distinction between such a taxing district and a city or county. Were such a taxing district involved here, the question would arise whether this court is bound by these twelve decisions or whether it is at liberty to follow its own interpretation of sections 157 and 158 and that of the decisions in the Nelson County Cases. The latest expression of the Supreme Court of the United States on the duty of a federal court in the matter of following decisions of the highest court of the state is to be found in the case of Edward Hines Yellow Pine Trustees v. Martin, 268 U. S. 458, 45 S. Ct. 543, 545, 69 L. Ed. 1050. It there said: "When questions affected by the interpretation of a state statute or a local rule of property arise in a federal court, that court has the same authority and duty to decide them as it has to decide any other questions which arise in a cause, and where state decisions are in conflict or do not clearly establish what the local law is, the federal court may exercise an independent judgment and determine the law of the case. * * * This court has refused to follow a rule established only by single state decision rendered, after the rights involved in the case in the federal court accrued * * * or a single decision when not satisfied that it is conclusive evidence of the state law."

But such a taxing district is not involved

here. The taxing district involved here does not operate solely through a single arm. It operates through two arms, to wit, a board of education and a fiscal court. The board administers the schools. It has no power to levy and collect taxes to enable it to so do. The function of the fiscal court is to levy such taxes. The board is required each year to make out a budget of its needs for that year and require the court to levy a tax to meet that budget, which is to be collected by the sheriff and handed over to the board. It has the absolute right to have the fiscal court to make such levy. The court has no discretion in the matter. Fiscal Court of Logan County v. Board of Education, Logan County, 138 Ky. 102, 127 S. W. 527, 529; Grant County Board of Education v. Chandler, 144 Ky. 348, 138 S. W. 271; Spradlin v. Floyd County Board of Education, 162 Ky. 677, 172 S. W. 1065; Breathitt County Board v. Breathitt County Fiscal Court, 188 Ky. 674, 223 S. W. 830, 832; Breathitt County Fiscal Court v. Breathitt County Board, 191 Ky. 437, 230 S. W. 914, 915; County Board of Education v. Fiscal Court, 221 Ky. 106, 298 S. W. 185; Board of Education of Marshall County v. Fiscal Court, 229 Ky. 774, 17 S. W.(2d) 1009.

In the Logan County Case the court said: "When the board of education requests the fiscal court to levy a property and capitation tax within the statutory limit, it is the duty of the fiscal court to levy the property and capitation tax requested by the board, if it is within the statutory limit. The fiscal court has no discretion to exercise on this subject. It must lay the levy demanded. In submitting to the fiscal court an estimate of the amount that in the judgment of the board is needed it is not necessary that the board should mention the specific purposes, or any of the purposes, to which it intends to apply the funds. The expenditure of the funds within the statutory limits is entirely within the discretion of the board of education."

In the last Breathitt County Case, it said: "It was the intention of the Legislature that such boards should be the sole judges of the needs of the schools, and to make them entirely independent of the city councils and fiscal courts through whose tax levies they must be supplied with funds for maintaining the schools; otherwise they often might be obstructed in the necessary exercise of their powers or performance of their duties by the whims or caprices of the latter, to the great injury of those entitled to the education to be had in the common schools."

Such being the nature of the taxing district involved here, those twelve decisions have no application thereto. Unhampered by them I am free to determine what powers the board of education of such district has in the matters of incurring and funding indebtedness. It is to be noted before proceeding further that the taxing district is not the board of education nor the fiscal court. They are simply the arms by which the taxing district operates. The taxing district is the county operating for school purposes. The powers which the board of education of such a district has depends entirely on the legislation pertaining to it. It has no other power than that which the Legislature has conferred upon it. Conceivably it may confer the power of incurring and funding indebtedness on the fiscal court on request of the board of education the same as the power to tax to meet the necessities of the board of education. If the concluding sentence of section 158 be taken as a grant of power, it grants no power to such a taxing district to incur indebtedness. It only grants power to fund it. As to funding indebtedness, it does not say which arm of such a taxing district shall exercise it. That it does not, makes against the position that that sentence contains a grant of power at all. Nor can the second sentence of section 157 be said to grant power to a board of education of such taxing district to incur indebtedness not in excess of its income and revenue for the year. It contains no grant of power. It merely limits the power of the Legislature in the matter of authorizing the incurrence of indebtedness. If it be construed as itself granting such authority, it does not say which arm of the taxing district shall have such authority. So it must be taken that a board of education of such a taxing district has no other power than such as may have been conferred upon it by the Legislature. The courts cannot supply any omission of that body in this particular.

■ The legislation relating to a taxing district consisting of a county operated for school purposes by its two arms is to be found in articles 5, 7, 8, 9, 15, and 16 of chapter 113 (section 4363 et seq.), Kentucky Statutes, entitled, "Schools—Common."

By section 4434a-7, Kentucky Statutes (1930 Ed.) art. 8, it is provided: "The various county boards of education in this Commonwealth shall assume the payment of any legal indebtedness contracted by the old boards of trustees under the old law and prior or to the taking effect of the act of 1908, by compromise, partial payment or otherwise,

as is deemed expedient and proper by said board of education. Said payments to be made out of the general school fund of the county. This law shall also apply to common school subdistricts that have become graded common school districts since 1908."

Prior to the act of 1908, here referred to, the various counties of the state were divided into several common school districts, each governed by a board of trustees. Each of these districts was a taxing district. The board of trustees not only operated the school in the district, but also levied the taxes to enable it to operate it. By that act these districts were established and converted into one county district operated by the county board of education and fiscal court in the way heretofore pointed out. The boards of trustees for the old districts had been empowered to incur indebtedness and at the time of the enactment of that act many, if not most of these districts, were legally indebted, and the section quoted originating in that act made provision for the payment of such indebtedness by the county board of education out of the general school fund for the county. Section 4399a-8 provides for the board of education making a budget. It refers to it as "an itemized and detailed school budget," and provides that it shall show "the amount of money needed for supplementing teachers' salaries, for permanent improvements, repairs, furniture, old buildings, maintenance and support of schools during the succeeding school year." This section provides further for the disbursement by the board of education of the moneys raised by the levy pursuant to its request and received by it. It provides that they "shall be devoted first and exclusively, up to the amount of the minimum levy herein provided, for the purpose of supplementing the teachers' salaries engaged in teaching in the territory affected by the provisions of this section until the minimum salary now allowed by law or as may hereafter be allowed by law for teachers is reached, and after said minimum has been reached the money raised by such levies may be used for supplementing teachers' salaries, building of schoolhouses, equipping same, and other costs of maintenance and operation as in the judgment of the county board of education may be determined." In these provisions no mention is made of indebtedness of the board as having a place in the budget or the items of disbursement, though it would seem that as a matter of fact any indebtedness of the old school districts, existing before the act of 1908, should have a place in them. There is no authority conferred on the county board of education to incur indebtedness in any year in anticipation of the funds to be received by it from the taxes levied by the fiscal court pursuant to its request. A taxing district for school purposes is created as to each city of the first, second, third, and fourth class, and provision is made for its operation by two arms as in case of a county school taxing district so operated, i. e., a board of education and the city council. In each instance the city board of education is authorized to incur indebtedness in anticipation of the taxes to be received by it. The provision is the same as to each class. It is in these words: "The board shall have power to borrow money on the credit of the board in anticipation of the revenue from school taxes for the fiscal year in which the same is borrowed and to pledge said school taxes for the payment of the principal and interest of said loan: Provided, that the interest paid shall in no case exceed six per cent (6%) per annum and the principal shall in no case exceed fifty per centum (50%) of the anticipated revenue."

Sections 2978a-24, 3235a-25, 3469a-2, and 3587a-16, Kentucky Statutes. This survey of this legislation would seem to be convincing that a county board of education has no power to incur an indebtedness in anticipation of its revenue. If it has such power it is without any legislative provision conferring the power on it, and it has power to incur an indebtedness to the full extent of the income and revenue coming to it when a board of education of a city of either one of these four classes is limited to 50 per cent. thereof. How then does the matter stand under the decisions of the Court of Appeals? The cases to be considered are the following, to wit: Breathitt County Board of Education v. Breathitt County Fiscal Court, supra; Breathitt County Fiscal Court v. Breathitt County Board of Education, supra; Elliott County Fiscal Court v. Elliott County Board of Education, 193 Ky. 66, 234 S. W. 947, 948; King v. Christian County Board of Education, 229 Ky. 234, 16 S.W.(2d) 1053, 1055; Hockensmith v. Franklin County Board of Education, 240 Ky. 76, 41 S.W.(2d) 656, 659; Fiscal Court of Pendleton County v. Pendleton County Board of Education, 240 Ky. 589, 42 S.W.(2d) 885, 888; Downey v. Board of Education of Logan County, 243 Ky. 66, 47 S.W.(2d) 931.

In the first Breathitt County Case the fiscal court refused to levy a tax required by its board of education, and suit was brought to compel it to make the levy. One item in its

budget was "old debts unpaid." The court said: "The board of education cannot arbitrarily fix the rate of taxation in excess of that needed, but the duty rests upon it to exercise a reasonable discretion in preparing the school budget, and it cannot raise a greater sum by taxation than is reasonably necessary to meet the needs of the schools for the year. It cannot accumulate a surplus in this way, but it can raise sufficient funds to take care of any old indebtedness of the board of education, for under section 4434a-7, Kentucky Statutes, all debts of school districts have become obligations of the board of education, so that the levy may be made to cover all such indebtedness."

The only indebtedness contemplated in this quotation which was to be cared for by the annual budget and levy was the indebtedness of old districts expressly provided for in section 4434a-7. The second Breathitt County Case was a second appeal of the same case as the first. The first appeal was from a judgment dismissing the petition which was reversed. The second was from a judgment for plaintiff after answer filed and trial had. In its answer the defendant, the fiscal court, attacked an item in the budget of $6,500, for old unpaid debts. It was held that a demurrer thereto was properly sustained. The court said: "Obviously, the answer makes no triable issue, as it neither specifies the date, amount, nor character of any debt, alleged to be illegal, that is included in the $6,500 total of old debts contained in the budget; nor does it state the purpose for which or names of the persons or any of them to whom the old debts were incurred or are owing."

And further: "The board of education did not have to specify by date, amount, or otherwise the several items of expenditures totaling $6,500, styled in the budget 'old debts unpaid.' If they were genuine, which should be assumed, it was sufficient to present them by the total amount, as was done, and it was the duty of the fiscal court to provide for their payment in the form presented, unless it was in possession of such information as would have enabled it to charge and prove that in presenting the demand as an item entitled to go into the budget, the members of the board acted corruptly or in bad faith, or that it embraced expenditures not authorized by law."

Here the court recognized the possibility of a county board of education being liable for indebtedness, and assumed that the $6,500 embraced in the budget on account of old debts unpaid was legal. This should be viewed, however, in connection with the statement quoted from the opinion on the first appeal, which also recognized such possibility but limited it to the indebtedness provided for in section 4434a-7, Ky. St. It is evident that the item old debts unpaid considered on the second appeal is the same as the item of old debts unpaid on the first appeal. These two cases, therefore, have no bearing on the question as to the power of a county board of education to incur indebtedness. In the Elliott County Case, the county board of education was granted a mandamus against the fiscal court commanding it to levy a tax for the amount of a budget submitted by the board which included an item of $12,000 on account of "Outstanding indebtedness." It is evident that this indebtedness had not been incurred by the old districts into which the county had theretofore been divided and which the county board of education had been required to assume, but that it had been incurred by that board after their abolishment. The fiscal court attacked the item on two grounds. One was that it had been incurred in violation of section 157 of the Constitution. The court met this with the fact that it was not alleged in the answer of the fiscal court that such was the case. The other was that the Legislature had not authorized its incurrence. Two considerations seem to have been advanced in support of this contention. No notice need be taken of one of them because of its frivolous character. The other was that the statute did not authorize the board to include in its budget an item of outstanding indebtedness. The court's answer to this was in these words: "While the act of 1920 does not in terms provide that prior indebtedness shall be included in the budget, it must be admitted that the payment of valid debts is as necessary for the proper support and maintenance of schools as for the support and maintenance of any other department of the government, and it is not to be supposed for one moment that the Legislature intended to compel boards of education to repudiate their valid debts by withholding from them the power to include such debts in their regular budgets. We took this view of the question in the case of Breathitt County Board of Education v. Breathitt County Fiscal Court, supra, and we perceive no reason why that ruling should not be adhered to."

The court took it for granted that a county board of education can incur indebtedness. It did not inquire into the matter and did not have before it the full argument against the county board of education having power to incur an indebtedness. That no provision

was made for including indebtedness in the budget was a small and negligible item therein. The full argument is this: There is no provision in the statute authorizing a county board of education to incur indebtedness to any extent. The board has no powers except such as the Legislature confers on it. That it should have certain powers is beside the case. It is not for the courts to supply an omission of the Legislature. That it did not intend the board to have such power is not dependent solely on the absence of a provision conferring it. There are several considerations which tend in that direction. One is that it is not mentioned as a possible item in its budget. This is weakened somewhat by the fact that, though it was not so provided, the board must have had the right to include indebtedness incurred under the old law and which it was required to assume. Another is that the board was required to assume and pay such indebtedness. This emphasizes the absence of a provision authorizing it to incur indebtedness on its own account. And a third consideration is that in cities of the first, second, third, and fourth classes the board of education is expressly authorized to incur indebtedness, and that this authority is limited to indebtedness in anticipation of income and revenues to be received, and that this indebtedness is limited to one-half of such income and revenue. Because of this last limitation it is so rendered that it is not at all likely that said board will ever have to include outstanding indebtedness as an item in its budget. However, it must be taken that this decision is an authority in support of the position that a county board of education has power to incur indebtedness. A complete statement and analysis of the decision in the Christian County Case will be made later. For present purposes it is sufficient to say that it was a suit by a citizen and taxpayer of that county against its board of education to enjoin it from issuing bonds in payment of its floating indebtedness. That indebtedness had been $150,000, and was then $61,000. The board was proposing to issue bonds to the extent of $50,000 to provide means to pay that much of its indebtedness. A demurrer to the petition had been sustained, and the court acted on the idea that the petition had been dismissed, which was not the fact. The action of the lower court in this particular was affirmed. The ground of the court's decision was that the petition alleged no facts showing that the board had no power to incur the indebtedness, and hence that it was invalid. In the course of the opinion the court discussed the question as to the powers of a county board of education to incur indebtedness, and cited the Nelson County Cases as setting forth the law on this subject. It stated that those cases held "that any deficit carried over from one year to another should be taken into calculation in measuring the amount to be expended, or additional debt to be created in the following year or years to which the deficit or accumulated deficit was carried, and so on as long as any deficit indebtedness exists. As such deficits are created and carried over the amount of allowed expenditures is reduced, and a pleading in such a case (and to which the present one belongs) should point out, not only the facts hereinbefore referred to, but the further one that the newly created deficit for each succeeding year was permissible when created after taking into calculation the carried-over indebtedness from previous years, and that each annual installment so carried over was itself valid as measured by the foregoing facts."

It is difficult to make out exactly just what this means. And as I construe the decisions in the Nelson County Cases, it is hardly an accurate interpretation thereof. They require an indebtedness incurred in anticipation of the income and revenue for that year to be paid out of same, and if not so paid to be paid out of the income and revenue for the next year. The income and revenue for the next year is chargeable therewith, and an indebtedness cannot be incurred in that year against so much of that income and revenue. If it is incurred it is invalid. This prevents the indebtedness being carried beyond the next year after it has been incurred and the existence of a large amount of unpaid indebtedness. Under those decisions I do not see how it is possible for a municipality to become indebted as much as $150,000, or even $50,000. The court does not seem to have realized that it was impossible, and the ground of its affirmance of the judgment of the lower court seems to imply that it was possible. It cannot be said that the court decided that a county board of education can incur indebtedness. What it did was to take it for granted that it could and did not question that it might. As to the extent of indebtedness which it might incur, it thought that the matter was governed by the decisions in the Nelson County Cases. It is to be noted that this decision was rendered after seven of the twelve decisions upholding the right of a municipality to fund a floating indebtedness, and that the court cited the decisions in two of them—the Rockcastle and Paris Cases—in

support of its position that the petition was defective in that it did not allege facts showing that the indebtedness was invalid.

The Franklin County Case was a suit by a citizen and taxpayer of the county against the county board of education thereof to enjoin it from issuing bonds in the sum of $26,-000 to fund an accumulated floating indebtedness that had been incurred by the board because of its spending (mostly for the preceding three years) a sum each year largely in excess of its revenues. The relief sought was based on the grounds that the indebtedness sought to be funded was invalid and that, though it may have been valid, there was no right in the board to fund it. The lower court held that the indebtedness was valid and that the board had the right to fund it, and dismissed the petition. The appellate court reversed the judgment on the ground that the indebtedness was invalid. There was no claim that the indebtedness was incurred in anticipation of the income to be received by the board for the year. It was conceded that it was in excess of such income. The ground on which it was claimed to be valid was that its budget had not covered the maximum amount which the board had a right to have the fiscal court levy. The position was that if the amount of the budget, to meet which the fiscal court is requested to make a levy, is less than what it might have been the board may incur an indebtedness equal to the difference between the two. The board need not make its budget as large as it is authorized to make it. It has the right to borrow the difference between what it is and what it might have been. This position was based on the decision in Vaughn v. City of Corbin as to a city of the third class. The court doubted whether this holding was sound, but assuming it to be sound it held that it had no application to a county school district operated by two arms, in that the board of education has no power to levy and collect a tax. It said: "A mere cursory reading of the statute forces the conclusion that a county board of education possesses no authority under the law to itself raise and produce any part of the public school fund that it may expend in the maintenance of the public schools. Its authority, in that regard, extends no further than to enable it to request, on certain conditions, the fiscal court of its county to augment the state school funds by levying and collecting a rate of taxes not exceeding the prescribed maximum limit, and if it should make no such request based upon the required conditions, it needs no argument to show that it could not expend the amount of money that could have been raised by such a request, but which it failed and refused to do."

As to the position taken in Vaughn v. City of Corbin, it said that it "is confined solely to tax-levying authorities and does not extend to purely an administrative body having no authority or right to levy or collect taxes; but that the latter can expend only such revenue as comes to it through the channels of the law, and if one of those channels be such as is provided in the section of the statutes, supra, which gives the board of education the conditional right to have enlarged its submitted budget to the fiscal court, such right furnishes no authority for it to become indebted over and above the amount that it sought to obtain by the submission of its budget or budgets to that court."

This decision supports the position heretofore taken that the twelve decisions conflicting with those in the Nelson County Cases have no application here, in view of the distinction between the character of municipality involved there, which operates by one arm, and that involved here, which operates by two arms. As to the right of a county board of education to incur indebtedness, the court said: "Clearly, as will appear from what we have said, it was the intention of the Legislature that a board of education should operate on the pay-as-you-go plan. Such a plan would result in no hampering of the board in executing and performing its functions; for, if after it has submitted its budget to the fiscal court of the county for the levy of a rate less than the maximum rate that it could have demanded, an emergency should arise, or it should become manifest that an additional levy, not to exceed in all the maximum rate prescribed, will be required, it could then submit an additional budget to the fiscal court accompanied with a request for an additional levy sufficient to meet the emergency, but not to exceed such provided maximum rate. In this manner it could perform its functions to the fullest extent, and at the same time confine its activities within the express provisions of the statute, and which latter, it appears, was enacted for the very purpose of restraining the board of education from expending money and becoming indebted in defiance of such statutory or constitutional restraints."

The court says nothing as to the right of the board to incur indebtedness against the additional levy after it has been made. Indeed it says nothing as to its right to incur indebtedness against a levy actually made

and in anticipation thereof. But its statement that it was the intention of the Legislature that the board "should operate on the pay-as-you-go plan" requires that if such indebtedness is incurred it must be paid out of the income and revenue derived therefrom or at the most out of that for the next year. The point decided is simply that a county board of education has no power to incur indebtedness against a levy that it might have requested and might have been made.

The Pendleton County Case was a suit by the board of education against the fiscal court for a mandatory order compelling it to levy 75 cents tax rate in accordance with its budget. In the budget was an item of $5,000 "for 'Payment of short term loans.'" This indebtedness was due to an insufficient levy of 50 cents for the previous two years. It was held that the board was entitled to the relief sought. It was based on the Elliott County Case and makes no mention of the Franklin County Case, decided a few months before, and with which it is seemingly in conflict.

It remains to consider the Logan County Case. The county board of education of that county had the power to submit a budget requiring the levy of a 75 cent rate to meet it. On April 4, 1931, it submitted to the fiscal court a budget requiring a 60 cent rate, and that body made the levy requested. Shortly thereafter large school buildings in the county were destroyed by fire. An additional levy of 15 cents bringing the levy up to 75 cents, the maximum rate, together with the insurance, was sufficient to replace them. The board made a request of the fiscal court to make such levy, but it failed to take any action. In anticipation of the yield which such levy would have made, the board borrowed the money necessary to rebuild. January 1, 1932, it discovered that the fiscal court had failed to make the additional levy requested, and on January 20, 1932, it adopted a resolution proposing to fund the indebtedness so incurred by issuing bonds therefor. Thereupon a citizen and taxpayer of the county brought suit to enjoin the board from taking such action. It was held that he was entitled to the relief sought. The court, however, held that the indebtedness so incurred was valid. It said: "Undoubtedly the indebtedness in the instant case was valid when created, because the board of education had complied with the provisions of section 4399a-8 of the Statutes by submitting an additional budget to the fiscal court accompanied with a request for an additional levy sufficient to meet the emergency."

As to the remedy of the board, the court held that it might seek a mandatory injunction against the fiscal court to compel it to make the 15 cent levy theretofore requested, or it might carry the indebtedness over into its budget for the following year. The court in so holding recognized that a county board of education may incur a floating indebtedness by borrowing money in anticipation of its income and revenue to be received, but limited its power to carry the indebtedness over to the next year.

Summing up these seven decisions as to their bearing on the question of the power of a county board of education to incur indebtedness, this is the result: The two Breathitt County Cases have no bearing on the question. They have to do solely with the assumption and payment by the county board of indebtedness incurred by the several school districts into which the counties were divided under the old law. The other five agree to a more or less extent in holding that such a board may incur indebtedness. The Christian and Franklin County Cases assume it rather than directly hold it. The Christian County Case so does in basing its affirmance of the dismissal of the petition by the lower court on the ground that it did not allege facts showing the indebtedness in question was invalid, and not on the ground that it had no power to incur indebtedness. The Franklin County Case so does in holding that the indebtedness there involved was invalid not because it had no power to incur indebtedness, but because it had no power to incur it against a levy which might have been and was not made. The Logan County Case limits the indebtedness which such a board may incur to one incurred in anticipation of income and revenue to be received from a levy. In that case it had not actually been but should have been made, and could be compelled. The indebtedness so incurred must be paid out of such income and revenue if possible, and if not possible not later than out of the income and revenue for the next year. To this view the Franklin County Case conforms in its statement that it was the intention of the Legislature that the board "should operate on the pay-as-you-go plan." That it conforms is recognized in the Logan County Case. The Christian County Case may also be said to conform thereto, in that it is stated therein that the Nelson County Cases govern the incurrence of indebtedness by a county board of education. The Pendleton County Case is not against this view. It is not certain that the Elliott County Case is against it, and if it

is it is of no weight. The Logan County Case must therefore be taken as determining the law as to the incurrence of indebtedness by a county board of education. Such is the law as to incurrence of indebtedness by such a board as I gather it from these five decisions. In taking such to be the law, I lay aside the fact that there is no provision in the legislation relating to county taxing district for school purposes conferring power on the county board of education to incur indebtedness to any extent; a fact not considered by the Court of Appeals in any one of these cases.

I come now to the question as to the power of a county board of education to fund a floating indebtedness lawfully incurred, and which is therefore valid. Of course if it has no power to incur an indebtedness to any extent it has no power to fund. If its power to incur indebtedness is limited as held in the Logan County Case, necessarily it has not the power to fund. According to such holding the indebtedness which may be incurred must be paid out of the income and revenue against which it is incurred, and if for some reason it cannot be so paid, it must be paid out of that of the next year. That it has to be so paid and that it may be funded, i. e., postponed to a later time, cannot go together. So it was held in that case that the indebtedness there involved, which was held to be valid, could not be funded. The decision in that case is therefore a direct authority to the effect that a county board of education has no power to fund an indebtedness. There is no decision to the contrary. The plaintiff will have it that the decision in the Christian County Case, on the faith of which the purchaser of the bonds here involved claims to have acted, is to the contrary, and that the decision in the Logan County Case in effect overrules it. They are quite confident that such is the case. In view of the position taken therein, that the decisions in the Nelson County Cases determine the power of a county board of education to incur indebtedness, it would be strange indeed if such is the case. This necessitates a more extended consideration of the decision in the Christian County Case than heretofore given. The resolution of the county board of education pursuant to which it was proposing to issue the bonds whose issuance was sought to be enjoined recited that the indebtedness to be paid had been "legally contracted." In addition to the prayer for an injunction against their issuance, plaintiff prayed "that defendant be put upon its proof whereby the validity of said

$61,000.00 of floating indebtedness, or in any event of $50,000.00 thereof, may be estimated," and that "if the validity of such indebtedness is so established to the satisfaction of this honorable Court, that it be allowed to be evidenced only in its present form." A copy of the resolution was filed with the petition as an exhibit. The injunction sought was not only against the issuance of the bonds, but against the payment of the indebtedness in any other way than "at such time or times, no matter when, as the defendant finds itself in funds available to liquidate the same." There was no general allegation in the petition that the involved floating indebtedness was invalid when created, though there was an allegation that the board that created it "had no authority in law so to do." Much less was there an allegation of facts showing that such was the case. The plaintiff's position was that he was entitled to the relief sought, unless the defendant established that the indebtedness was valid. He seems to have had no idea that it was incumbent on him to allege facts showing that it was invalid and if denied to establish them. The prayer that if the validity of the indebtedness was established it be allowed to be evidenced only in its present form, i. e., by notes, and be paid in no other way than out of funds available for that purpose, was in effect a prayer for an injunction against the issuance of the bonds even though the validity of the indebtedness be established. The defendant filed at the same time a demurrer and answer. In its answer it admitted all the allegations of the petition, and though it had not styled its pleading a counterclaim, it sought counter relief by it. It stated that it was "prepared to prove the validity of the indebtedness referred to in its order or resolution of February 4, 1929," and "that said $50,000 of floating indebtedness intended to be funded, being shown to be valid and a subsisting obligation of this Board, is capable of being funded into bonds by virtue of section 158 of the Constitution of Kentucky." It prayed that it be permitted to do so; "and that it be authorized to proceed as in the order or resolution of February 4, 1929." This indicates that it was thought that Vaughn v. City of Corbin and the cases following it governed the right to fund the indebtedness. A stipulation by the parties was filed in which was set out the evidence of the floating indebtedness, the duplicate assessments, delinquent lists, exonerations, etc., for each of the years of the period in which the debt was created. The court stated that the purpose thereof was "to show that if such delinquent

lists, exonerations etc., for each of the years of the period in which the debt was incurred had not occurred, the revenues would have been sufficient to have met the annual expenses without the incurring of any indebtedness." The lower court sustained the demurrer to the petition and denied the injunction prayed for, but it did not dismiss the petition. It adjudged that the floating indebtedness intended to be funded "was lawfully contracted" and "is now a valid, binding and subsisting obligation," and that defendant could lawfully fund it by issuing the contemplated bonds. This adjudication was based upon defendant's pleading. The plaintiff excepted to and appealed from this judgment. The words in which it did so were these: "To which judgment, particularly that portion thereof that authorizes the issuance of bonds and denies plaintiff's prayer that defendant be restrained from issuing said bonds, plaintiff by his counsel excepts and prays an appeal to the Court of Appeals of Kentucky, which is granted."

The appellate court took note of the fact that the petition had not been dismissed. The litigation, as the court pointed out, was friendly. The plaintiff was represented by the attorney for the concern which desired to purchase the bonds. The court reversed the judgment of the lower court in so far as it adjudged that the indebtedness intended to be funded "was lawfully contracted," and "is now a valid binding and subsisting obligation," and directed that court to expunge from its judgment that part thereof. It affirmed the judgment "in all other respects." This was an affirmance thereof in so far as it sustained the demurrer to plaintiff's petition, denied the injunction sought, and dismissed the petition; it being assumed that the petition had been dismissed. This affirmance was based on the ground that the petition was defective in not alleging facts showing that the indebtedness referred to therein was invalid. The court said: "If it had gone to the extent of expressly averring that the involved floating indebtedness was illegal, but without stating the facts establishing such illegality, it then would have been insufficient because averring only conclusions and not facts."

It was held that the statement in the resolution of the board, a copy of which was filed with the petition, that the indebtedness had been "legally contracted," did not help matters, as an exhibit does not supply an omission in a pleading, and the statement was a mere conclusion. The judgment on defendant's pleading adjudging that the indebtedness had been lawfully contracted and was a valid, binding and subsisting obligation was reversed on the same ground. There was no allegation of facts in defendant's pleading showing that such was the case. The court said: "We have seen that, if its answer could be treated as one seeking cross-relief, the same defects existed in it that we have hereinbefore pointed out with reference to the petition, i. e., that it alleged only conclusions and not facts. So that, the entire record presents to the court no fact upon which a judgment could be based either the one way or the other, i.e., that the floating indebtedness was either valid, or invalid."

It is in the light of this full and accurate statement of the facts of the Christian County Case that the question whether the Court of Appeals held therein that a county board of education can fund a valid floating indebtedness is to be considered. Plaintiffs' confidence that a true appraisal of the decision in that case is that such a board may fund such an indebtedness, is expressed in extravagant language. They say that if such is not the meaning of the decision "there are no terms in the English language capable of expressing" it. It says to "all the world as plainly as any legislative enactment could say 'A county Board of Education finding its floating indebtedness to be one validly incurred, it may fund it by issuing bonds.'" They say further: "That is exactly the way the world interpreted the Christian County Case, as it had the right to interpret it."

And further: "The court in the King Case, D I D, affirm the power of a Board of Education to issue funding bonds."

This position is attempted to be made out in two ways. The court affirmed the judgment of the lower court in so far as it sustained the demurrer to plaintiff's petition, denied his right to an injunction against the issuance of the bonds, and dismissed the petition. The meaning of this is that the court refused to restrain the defendant, the board of education, from issuing the bonds. It follows from this that the court held that the fiscal court had the right to issue the bonds. If such refusal justifies such holding, it would seem to justify it even though the indebtedness sought to be funded was invalid. I cannot see why it does not go this far. If the mere refusal of a court to restrain the issuance of bonds is a holding that they may be rightfully issued, there is no limitation on the right to issue them. Plaintiffs, however, will not have it that the holding goes this far. It goes no further than holding that the

board has the right to issue them if the indebtedness is valid. They would so limit it because the petition prayed for an injunction against the issuance of the bonds even though it should be held that the indebtedness was valid. This set up the claim that the board has no right to fund valid floating indebtedness. The position that such was the holding of the court is a mere inference from the refusal to restrain the issuance of the bonds. The court in its opinion said not a word to this effect. The position is unsound, and it is incapable of justification. Had the appellate court delivered no opinion and confined itself to affirming this portion of the judgment without setting forth the reason for its action, the judgment so affirmed would not have been res adjudicata as to the right of the defendant board to issue the bonds in a new suit brought by plaintiff against it. This would be so because there were two grounds upon which the judgment could be based. One was that it did not appear from the petition that the indebtedness sought to be funded was invalid. The other was that even though it was valid there was a right to fund it. It could not be told on which ground the judgment was based. In such a case the judgment is not res adjudicata on either ground. In Russell v. Place, 94 U. S. 606, 608, 24 L. Ed. 214, it was said: "It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record,—as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered,—the whole subject-matter of the action will be at large, and open to a new contention; unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined."

But the judgment in the Christian County Case was not affirmed without opinion. An opinion was delivered giving the reasons for the court's action. There is no uncertainty as to that reason. It so acted because the petition did not allege facts showing that the indebtedness sought to be funded was invalid. It did so for that reason and none other. It did not so do because the board had the right to fund the indebtedness if it was valid. It did not pass on that question. It was not necessary for it to do so in view of the fact that the plaintiff was not entitled to the injunction on the other ground. The court took pains to point out that its judgment was not res adjudicata even as to the validity of the indebtedness. It was only such as to the question that the petition did not allege facts showing that it was invalid. It said: "The dismissal of a pleading because of its omitting to state essential allegations is not a bar to a subsequent proceeding seeking the same relief even though it be between the same parties."

If then the judgment in the Christian County Case affirmed by the appellate court is not a bar to the litigation of the question in a new suit brought by plaintiff against the defendant to enjoin the issuance of the same bonds either as to the validity of the indebtedness or as to the right to fund it if valid, how is it possible to say that the appellate court by its action in this particular held out to all the world that the defendant had power to issue the bonds if the indebtedness was valid. The position is absurd. It amounts to this: If one does not deny a proposition when the occasion does not call for an expression on it, though it affords an opportunity for it, he affirms it.

The other way in which the position under consideration is attempted to be made out is this: In the decision of the appellate court reversing the judgment of the lower court, based on the defendant's pleading, the reversal was confined to its adjudication that the indebtedness had been lawfully contracted and was a valid, binding and subsisting obligation. It said nothing as to its adjudication that the defendant could lawfully fund it by issuing the contemplated bonds. This was a mere omission. The reversal thereof followed necessarily from the reversal of what was expressly mentioned. It was not essential that it be expressly said that it was reversed also. This is on the principle that the tail goes with the hide.

That its decision in the Christian County Case meant no more than that the petition did not allege facts showing that the indebtedness sought to be funded was invalid was recognized by the appellate court in the Franklin and Logan County Cases. In the one it was said: "The relief therein sought (which was the approving by the court of contemplated bonds for the funding of a floating indebtedness of the county board of edu-

cation) was denied by that opinion because it was not shown that the indebtedness proposed to be funded was valid."

It said further on the subject of the right to incur the indebtedness: "The question as to how and when, if at all, a county board of education could become indebted * * * was not determined."

In the other case it said: "The question as to whether or not a county board of education could, under any circumstances, fund even a valid floating indebtedness was not determined in that case. The only question decided was that the pleadings did not present facts showing that the indebtedness proposed to be funded was valid."

The Court of Appeals therefore did not hold in the Christian County Case that a county board of education has the right to fund a valid indebtedness, and there is nothing in its opinion to justify an investor in thinking that it was so held. All that can be said is that there are indications in its opinion in that case and in the Logan County Case that it did not have a clear conviction that such a board did not have such a right, and did not speak out emphatically against it. It seems to have had a vague idea that possibly it might have such right in some case. In the Christian County Case it said: "Under the harmony course that we have adopted herein, we will pursue the discussion upon the theory that the court dismissed the petition. In that event the dismissal could not be treated as an adjudication of the validity of the involved indebtedness so as to permit it to be funded by defendant through the issual of the proposed bonds."

In the Logan County Case it said: "Whether or not a county board of education can fund by the issuing of bonds a valid floating indebtedness under any circumstances is not presented."

This is to be accounted for by the fact that the decisions in the Vaughn v. City of Corbin and cases following it had muddied the water as to funding valid floating indebtedness. But there is nothing in these expressions to justify the investor in thinking that it was the opinion of the Court of Appeals that a county board of education can under any circumstances fund a valid floating indebtedness, conceding the possibility that there may be such an indebtedness.

The conclusion, therefore, must be that the defendant had no power to fund the floating indebtedness merged in the bonds in suit, even though it may have been valid.

Thus far in the discussion I have assumed that the floating indebtedness was valid. But such was not the case. The evidence establishes beyond question that it was not. On July 1, 1926, the defendant was free from debt. This indebtedness was all incurred within two and a half years prior to its funding and at the dates of the several notes representing it. It would seem to have been incurred in building and equipping a schoolhouse at Woodbine, in Whitley county. No part of it was incurred in anticipation of income and revenue to be received. The first borrowing was of $5,000 on June 4, 1927. July 1, 1927, was the end of that fiscal year. All of the income and revenue for that year had been collected and expended. Each of the other sums borrowed was in excess of what could be paid from the income and revenue of the year when created. The case might have been disposed of on the ground that this indebtedness was invalid without the extended consideration given to the question whether the defendant had power to fund it if it was valid had it not been for the recitals in the resolutions of defendant authorizing the issuance of the bonds and in the bonds themselves. The first five of those in the resolutions were as follows:

(1) Beginning with the year 1919 and terminating with the year 1929 delinquencies and losses in the taxes accruing to the defendant produced a deficiency in its income account aggregating $16,000 at the end of the year 1929.

(2) During those years the obligation was entailed on the defendant to pay the costs of properly conducting the schools, providing a minimum salary of $75 per month for teachers, but requiring it in many cases to exceed that minimum in accordance with the schedule of salaries fixed by the state board of education, and pay the tuition for county school districts in the county, all of which was attempted to be done out of the yearly revenues which were depleted from year to year and proved insufficient for those purposes.

(3) To meet those costs from year to year it became necessary to borrow money, and these loans were represented by notes and other evidence of debt aggregating $16,000, which were then outstanding against defendant.

(4) But for the losses in the revenues accruing to the defendant they would have been ample to pay these costs without the necessity for borrowing money therefor.

(5) The proportion of the floating indebtedness incurred in any one of the years

from 1919 to 1929, together with all other obligations incurred in any such year, were not in excess of the revenues accruing to the defendant for any of those years.

The recital in the bonds was as follows, to wit: "It is hereby certified and recited that all acts, conditions and things necessary to be done precedent to and in issuance of this bond in order to make it legal, valid and binding obligation of said county school district and of said Whitley County Board of Education have been done, have happened and been performed in regular and due form as required by law * * * that no limitation of indebtedness or taxation, either constitutional or statutory has been exceeded in issuing this bond."

Each one of these statements in the resolution and bond was untrue. It was utterly without basis. No justification or excuse for them has been offered. They came from the purchasers of the bonds who prepared them for adoption and insertion. How far they were aware of their untruthfulness does not appear. It is certain that the plaintiffs, subsequent purchasers of them for value, were not aware thereof, and that they purchased them in good faith relying on their truthfulness. This gives rise to the question whether defendant is estopped to deny them. It is possible that by reason of them it is estopped to deny the validity of the indebtedness, but not the power to fund it. Hence the necessity of determining the existence of such power, to which so much of this opinion has been devoted. I have had occasion to present the law on the subject of estoppel of recitals in such bonds in the case of Dietrich v. Bath County, Ky. (D. C.) 292 F. 279; Eyer & Co. v. Mercer County, Ky. (D. C.) 292 F. 292.

My decision in the Mercer County Case was affirmed in Mercer County v. Eyer (C. C. A.) 1 F.(2d) 609.

The appellate court of this circuit has followed its decision in that case in Henderson County, Tenn., v. Sovereign Camp, W. O. W., 12 F.(2d) 883; State Bank v. Henderson County, Kentucky, 35 F.(2d) 859.

Since these decisions I have rendered judgments on bonds issued by Pulaski and Morgan counties claimed to be invalid, and which probably were, because of recitals in the bond estopping those counties, respectively, from raising the question of invalidity, from which no appeals have been taken. My conception of such law as thus presented is this: Recitals in bonds issued by municipalities are effective as an estoppel only where they have legislative authority to issue them. Where there is no such authority they are of no avail. They may be effective where there is legislative authority to issue the bonds and they relate to the existence of the conditions on which alone authority to issue them exists. In order for them to be effective in this particular it is essential that they be broad enough to state that the required conditions exist, and the municipality must have authority to make them. If either they are not so broad or, if the making thereof is not authorized, they are and can be of no avail. Authority to make them need not be express. Usually it is implied. It is implied where the purchaser cannot readily determine for himself the existence of the required conditions. This is essential in order to enable the municipality to sell them. Here it is open to say that the plaintiffs could readily have ascertained whether the recitals relied on were true and whether the floating indebtedness for which the bonds in suit were issued was valid, and hence that there was no authority on the part of the defendant to make the recitals, and for that reason there can be no recovery on the bonds. But, however this may be, it is certain that there was no legislative or constitutional authority for their issuance. The plaintiffs were bound to take notice of this whatever may have been the recital on the subject. It follows that I feel constrained to hold that plaintiff cannot recover, and that their bill must be dismissed.