# Elliott v. Fiscal Court of Pike County et al.

(Decided March 10, 1931.)

FRANK P. DAMRON for appellant.

SIDNEY TRIVETTE and JOHNSON & HINTON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE LOGAN— Affirming.

Appellant instituted this action for himself, and for the use and benefit of all other taxpayers in Pike county, praying for an injunction which would prevent the fiscal court from levying a tax for the payment of interest and for the creation of a sinking fund made necessary by the issuance of certain bonds which the fiscal court had authorized, which bonds were then in the hands of the Day & Night National Bank of Pikeville and, further, to enjoin that bank from negotiating, or selling, the bonds, and also that the bank be compelled to return the bonds to the fiscal court and that they be canceled. In his petition the appellant sets up a state of facts which he contends constitute proof that the bonds were unauthorized, and the tax levy to pay interest and create a sinking fund illegal and the action of the fiscal court in authorizing the issuance of the bonds void.

It is alleged that on January 3, 1931, the fiscal court entered an order, a copy of which is made a part of the petition, providing for the issuance of 5½ per cent. funding bonds dated January 1, 1931, in the aggregate sum of $157,000, and for the delivery of them to the Day &

Night National Bank of Pikeville pursuant to an agreement between the fiscal court and that bank. The agreement between the bank and the fiscal court bears the same date as the order, and it is made an exhibit with appellant's petition.

The order of the fiscal court recites that Pike county has an outstanding indebtedness of more than $157,000 legally incurred for lawful purposes, and that the indebtedness was due and payable and evidenced by a judgment rendered by the circuit court of Pike county on September 23, 1930, in favor of the Day & Night National Bank of Pikeville for the principal sum of $150,332.93, plus the accrued interest, and that the judgment so rendered in the Pike circuit court was appealed to the Court of Appeals of Kentucky and affirmed by that court on November 25, 1930. It was recited in the order that the county had no funds available to pay the judgment, and for that reason, the best interests of the county demanded that the indebtedness be funded so that it could be liquidated in installments through a series of years. After the recital of the facts, the order directed the fiscal court to issue for the purposes mentioned funding bonds in the aggregate sum of $157,000 bearing date January 1, 1931, and in the denomination of $1,000 each, bearing an interest rate of 5½ per cent. per annum payable semi-annually. The maturity date of the bonds was fixed beginning with 1935 and ending in 1950. The bonds were to have interest coupons attached. The form of the bonds with attached coupons was set up in the order. There is a provision in the order that the proceeds realized from a sale of the bonds shall be used exclusively for the funding of the indebtedness mentioned in the order, and that the indebtedness evidenced by the judgment should be cancelled simultaneously with the delivery of the funding bonds in accordance with the agreement mentioned above. In another paragraph the order provides the levy and collection of a direct annual tax sufficient to pay the interest on the bonds and to pay and discharge the principal thereof at their several maturities, and such a tax was levied by the order on all the taxable property in the county for each year the bonds, or any of them, were outstanding. It is provided in the order that the proceeds of the tax when collected shall be used exclusively for the payment of the interest and the principal, but there is a provision in the order that

the tax rate so levied, and for the purposes levied, shall not exceed any limitation imposed by the Constitution, or Statutes, upon the power of the fiscal court to levy taxes.

The agreement between the bank and the fiscal court filed as an exhibit was an offer for the bonds made by the bank and accepted by the fiscal court. When the bonds had been authorized by the order of the fiscal court and the 'bid of the bank accepted, the bonds were issued and turned over to the bank.

After showing by the foregoing allegations how the bonds came to be issued, appellant alleged that the gross revenues accruing to the general fund for the current year which might be anticipated upon the basis of the assessed valuation of property including taxes derived from other sources would not be in excess of $175,000, and that the expenditures which had been made to carry on the business of the county for the current year including the necessary expenditures of administering the governmental affairs of the county for the balance of the year would not be less than $150,000; that at the beginning of the fiscal year and at the time the bonds were authorized there was an outstanding funded indebtedness, other than bonded indebtedness for road and bridge purposes which had been authorized by the people, in excess of $168,000; and that the issuance of the bonds aggregating the sum of $157,000 was the creation of a debt in excess of the income or revenue provided for the current year without the assent of the voters of the county as required by section 157 of the Constitution, and because the issuance of the funding bonds mentioned in the order were in excess of the income and revenue of the county for the current year when considered in connection with outstanding indebtedness which must be charged against such income and revenue, the order of the fiscal court was void.

The fiscal court and the bank filed an answer substantially admitting as true all of the allegations in the petition except as to the invalidity of the bonds, and, after denying that the bonds were invalid because issued contrary to the provisions of section 157 of the Constitution, the answer contained these further allegations:

That in an action by the Day & Night National Bank of Pikeville against the fiscal court of Pike county the

circuit court of Pike county, on September 23, 1930, rendered a judgment in favor of the bank against the fiscal court for the sum of $150,332.93 with interest at 6 per cent. per annum from March 1, 1930, until paid, which judgment covered valid and legally incurred indebtedness of Pike county evidenced by warrants theretofore issued by the fiscal court, and that the judgment, including interest, on January 1, 1931, amounted to more than $157,000, and that the judgment rendered by the circuit court of Pike county was affirmed by the Court of Appeals of Kentucky on November 25, 1930;

That the county had no funds available to pay the judgment at the time of the entry of the order by the fiscal court without seriously impairing the administration of governmental affairs, and that the bonds were issued and accepted in good faith and for value received as set out in the order;

That the indebtedness contracted by the bonds was within the limitations imposed by the Constitution and laws of Kentucky, that is, the indebtedness so created did not exceed 2 per cent. of the value of the property assessed for taxation in the year next before the issuance of the bonds including outstanding indebtedness of the county at the time, and that the levy for the payment of interest on the bonds authorized by the order and the creation of a sinking fund was within the tax rate of 50 cents on each $100 valuation of taxable property in the county, and was, therefore, not violative of section 158 of the Constitution;

That the issuance of the bonds merely changed the form of a previously valid indebtedness of the county and created no new indebtedness of any kind;

That the bank was not in possession of the bonds, but had negotiated, sold, and transferred them to sundry parties for value received, and that it was out of its power to recall the bonds;

That the judgment which had been obtained against the county had been credited by the proceeds of the bonds.

A financial exhibit was filed with the answer showing that the assessed valuation of the property for taxation in Pike county was $33,381,442; that outstand-

ing road and bridge bonds authorized by the vote of the people was $725,000, with an accumulated sinking fund for their retirement aggregating $101,850.74, leaving a net indebtedness of the county for outstanding road and bridge bonds of $623,149.26; that there were funding bonds outstanding aggregating $175,000, with an accumulated sinking fund of $6,500, leaving an unpaid balance on these bonds of $168,500; that the floating indebtedness was $157,000, which is the indebtedness that the bonds mentioned in the order were issued to fund.

If these figures be correct, the county has funded floating indebtedness aggregating $325,500, and, in addition, it has road and bridge bonds outstanding which were authorized by a vote of the people.

A demurrer was filed to the answer and each paragraph thereof, which was overruled. The chancellor upheld the validity of the order directing the issuance of the bonds and the use of the funds to retire the judgment which had been obtained against the county and dismissed the petition.

The appellant argues that the judgment against the county is not a floating indebtedness. We find the argument without merit. A "floating debt" is one existing against a county where there is no present means of payment. Where indebtedness is represented by bonds payable out of a special fund, or when the means of payment is definite and certain, and the funds have been provided, or are actually on hand, the debt may not be termed a floating indebtedness. But if there is no money in the county's hands available, or specifically designed, for the payment of the particular indebtedness, it is what is denominated a floating indebtedness such as is referred to in the closing sentence of section 158 of the Constitution.

26 C. J. 742, in a brief discussion of the meaning of floating indebtedness, makes this observation:

> "As applied to muncipal corporations, that mass of lawful and valid claims against the corporation, for the payment of which there is no money in the corporate treasury designed, nor any taxation or other means of providing money to pay, particularly provided."

It is that character of indebtedness which our Constitution allows to be funded as has been written by this court in a number of cases.

The case of Crick, County Judge, et al. v. Rash, 190 Ky. 820, 229 S. W. 63, defines with accuracy what is meant by "indebtedness." It was there held that a debt is an obligation to pay money at some fixed future time, or at a time which may become definite and fixed by act of either party, and which act they expressly, or impliedly, agree to perform in the contract creating the debt. The opinion pointed out that the inhibitions of the constitutional provisions do not apply to, or include debts contracted in anticipation of and which may be paid out of the revenues already levied or to be collected for the fiscal year in which the contract is made, nor to a debt contracted to be paid out of revenues already in the treasury for the purpose, nor to a debt to be paid out of a special fund. That opinion defines, with clarity, indebtedness which is not a floating indebtedness, but any legal indebtedness contracted without money specifically provided or designed to pay it is a floating indebtedness.

The allegations in the petition in the case before us, as well as those in the answer, show clearly that the indebtedness which it was proposed to fund was a floating indebtedness.

It is further argued by the appellant that a floating indebtedness may not be funded as was held in the case of McCrocklin v. Nelson County Fiscal Court, 174 Ky. 308, 192 S. W. 494; Nelson County Fiscal Court v. McCrocklin, 175 Ky. 199, 194 S. W. 323; and City of Winchester v. Nelson, 175 Ky. 63, 193 S. W. 1040. It is true that the opinions in these cases appear to have ignored the concluding provision of section 158 of the Constitution, but in a number of later cases beginning with Vaughn v. Corbin, 217 Ky. 521, 289 S. W. 1104, and including City of Covington v. Moore Co., 218 Ky. 102, 290 S. W. 1066; Baker v. Rockcastle County Court, 225 Ky. 99, 7 S. W. (2d) 846; Hogan v. Lee Fiscal Court, 235 Ky. 100, 29 S. W. (2d) 611, that provision was construed. The last-cited case contains a citation of the other recent cases wherein it has been held that a valid floating indebtedness may be funded under the provisions of section 158 of the Constitution.

It is incumbent upon the party attacking the validity of the indebtedness of a county to allege and prove that the indebtedness is invalid. Elliott County Fiscal Court v. Elliott County Board of Education, 193 Ky. 66, 234 S. W. 947. A custom has grown up whereby those representing all parties in cases attacking the validity of the indebtedness of a county or municipality desire the validity of the indebtedness upheld, and the attack does not show evidence of good faith and the allegations in the pleadings are so made as to present an appearance of validity. In such cases this court has declined to adjudge the validity of the indebtedness and has held that the validity of the funding bonds is dependent upon the validity of the floating indebtedness funded. The cases cited in Hogan v. Lee Fiscal Court, supra, disclose that this court has declined to determine the validity of the floating indebtedness when the allegations of the pleadings and the proof were not such as to enable the court to determine whether such indebtedness transgressed constitutional provisions. It is unfortunate that such practice has grown up, and it has led to the issuance of bonds which, on their face, may appear in all respects regular when their validity is subject to attack at any time. This court has never gone further than to hold that a valid floating indebtedness may be funded under the provisions of section 158 of the Constitution. There can be such an indebtedness under the constitutional provisions as construed by this court beginning with decisions rendered soon after the adoption of the present Constitution. There is no doubt that it was the purpose of the framers of the Constitution that all counties should conduct their affairs on a cash basis. The failure to do so has led to interminable trouble. Many of the counties are well-nigh overwhelmed with indebtedness which may have been incurred legally, but was not paid at the time and in the manner that it should have been paid. Under section 157 of the Constitution a county may levy a tax not exceeding 50 cents on the $100 of assessed valuation of property in the county subject to taxation, but at times the fiscal court has levied less than 50 cents on the $100 of the assessed valuation of property in the county, and the difference between the amount of money actually raised by the actual levy and the amount of money which would have been raised if the

maximum levy had been imposed was a reserve left with the taxpayers against which an indebtedness might be created, and it has been held by this court many times that an indebtedness created against this unused well of resources was a valid indebtedness. There may be argument on both sides of the question as to whether such an indebtedness should have been allowed, but the matter has been settled for many years by this court's holding that such debts were valid, and to change the rule at this time would upset the financial affairs of counties and other municipalities and bring about conditions chaotic in their character. No provisions of the Constitution have been before this court so often as those found in sections 157 and 158 of that instrument. Their interpretation by this court has become a part of the laws of the state and nothing is more important than an unvarying interpretation of constitutional provisions. The language found in the provisions of the Constitution is the Rosetta stone by which the meaning of the provisions must be determined. When the meaning is once determined, it is unwise to change the interpretation unless impelled to do so by reasons most convincing.

The case before us is not embraced in the designation of cases referred to above which may be considered sham cases presenting sham facts in sham pleadings. The facts are fully disclosed by the record. When the judgment which it is now sought to fund by the issuance of the bonds in question was obtained, an appeal was prosecuted to this court and the judgment of the lower court was affirmed by an opinion in the case of Pike County v. Day & Night National Bank of Pikeville, 236 Ky. 202, 32 S. W. (2d) 969. It was there held that the burden of proving the invalidity of the indebtedness was on those attacking it, as the presumption is that an indebtedness incurred by a county or other municipality through officer authorized to contract on its behalf is within the constitutional limit, and that the burden of establishing otherwise is upon the party challenging the validity of the indebtedness.

We find nothing in the record which calls for a reversal of the judgment below.

Judgment affirmed.

Whole court sitting.

Judges Thomas, Rees, and Dietzman, dissenting.