## FIRST TRUST CO. OF ST. PAUL et al. v. COUNTY BOARD OF EDUCATION OF WHITLEY COUNTY.

### No. 6651.

Circuit Court of Appeals, Sixth Circuit.
June 6, 1935.

Robert S. Marx, of Cincinnati, Ohio (Alfred Holman and Nichols, Morrill, Wood, Marx & Ginter, all of Cincinnati, Ohio, on the brief), for appellants.

H. C. Gillis, of Williamsburg, Ky. (Tye, Siler, Gillis & Siler and B. B. Snyder, all of Williamsburg, Ky., on the brief), for appellee.

Before HICKS, SIMONS and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

Bill in equity to remove a cloud on appellants' title to 16 bonds, for $1,000 each, dated December 1, 1929. Five of these bonds were due December 1, 1945, 5 on December 1, 1946, and the remainder on December 1, 1947. On December 30, 1929, they were all sold by appellee to Magnus & Co. for $16,000 and accrued interest, and the proceeds paid to appellee's treasurer were used to discharge an existing indebt-

edness of appellee, represented by four notes as follows:

First National Bank of Williamsburg, dated June 4, 1927 .... $ 5,000.00
First National Bank of Williamsburg, dated April 2, 1928 .... 6,000.00
Bank of Williamsburg, dated Sept. 10, 1929 .............. 2,000.00
First National Bank of Williamsburg, dated October 25, 1929.. 3,000.00

Total ................... $16,000.00

These notes represented money borrowed by appellee to pay certain debts, hereinafter more fully referred to. Five of the bonds were finally purchased by appellants, Trust Company and Butlers, executors, and the remainder by appellant Alfred F. Pillsbury. All were bought in good faith, for value, and without notice of any defect therein or of any claim of invalidity. Appellee paid the interest coupons, maturing June 1, 1930, but failed to pay those coming due thereafter and refused to certify in its annual budget to the fiscal court of Whitley county the amount necessary **to** pay interest and create a sinking fund.

■ Appellants invoked federal jurisdiction on the ground of diversity of citizenship. The District Court had jurisdiction. Appellants were residents and citizens of Minnesota, and appellee, under section 4399a-5 of Carroll's Kentucky Statutes, was a corporation which might sue and be sued. The value of the right sought to be protected by each appellant, the executors and Pillsbury, exceeded $3,000.

Appellee defended upon two grounds: (1) That it had no authority to issue the bonds; and (2) that there was no record evidence as required by section 4399a-5 of the Kentucky Statutes that they had ever been issued.

■ The second contention is without merit. At a meeting regularly held on November 23, 1929, with all members of appellee present, the issuance and sale of the bonds was authorized and the minutes of the meeting, properly signed, were preserved on typewritten sheets of paper which were attached to the official record book with paper clips. Although these sheets became detached and were missing, certified copies were preserved.

■■ The District Court decreed that the bonds were illegal and void upon the ground that appellee was unauthorized to issue them. 5 F. Supp. 49. It based its holding upon its construction of the last two sentences of section 157 of the Kentucky Constitution, to wit, "No county, city, town, taxing district, or other municipality shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforceable by the person with whom made; nor shall such municipality ever be authorized to assume the same," and upon the first sentence of section 158. The court followed the opinions of the Court of Appeals of Kentucky in the cases of McCrocklin v. Nelson County Fiscal Court, 174 Ky. 308, 192 S. W. 494, and Nelson County Fiscal Court v. McCrocklin, 175 Ky. 199, 194 S. W. 323. It recognized, however, that the holdings in the Nelson County Cases had been materially modified by later ones and cited ten such cases. In the earliest, Vaughn v. City of Corbin et al., 217 Ky. 521, 289 S. W. 1104, the court reviewed section 157 of the Constitution in connection with the last sentence of section 158, to wit, "Nothing herein shall prevent the issue of renewal bonds, or bonds to fund the floating indebtedness of any city, town, county, taxing district or other municipality," and held that the city had power to issue bonds to fund a floating indebtedness which had arisen from failure to make within the past years and within the authorized limits a sufficient tax levy. The Vaughn Case was decided in 1927 and the Court of Appeals has followed it in so far as it relates to the floating indebtedness of municipal corporations and fiscal county courts. See Wilson v. City of Covington, 220 Ky. 795, 295 S. W. 1069; Wilson v. City of Covington, 220 Ky. 798, 295 S. W. 1068; Davis v. City of Newport, 224 Ky. 546, 6 S.W.(2d) 693; Baker v. Rockcastle County Court, 225 Ky. 99, 7 S.W.(2d) 846; Welch v. City of Nicholasville, 225 Ky. 312, 8 S.W.(2d) 400; Rowland v. City of Paris, 227 Ky. 570, 3 S.W.(2d) 791; Hogan v. Lee Fiscal Court, 235 Ky. 100, 29 S.W. (2d) 611; City of Frankfort v. Fuss, 235 Ky. 143, 29 S.W.(2d) 603; Elliott v. Fiscal Court of Pike County, 237 Ky. 797, 36 S.W. (2d) 619; Pace v. City of Paducah, 241 Ky.

568, 44 S.W.(2d) 574; Bond v. City of Corbin, 241 Ky. 663, 44 S.W.(2d) 576.

None of these cases involves county boards of education, but on May 3, 1929, the Court of Appeals decided the case of King v. Christian County Board of Education, reported in 229 Ky. at page 234, 16 S.W.(2d) 1053, 1054. The facts of that case are similar to those here involved and the case seems to have been brought to test the precise question under review. The board of education of Christian county had accumulated over several years an indebtedness in the sum of $150,000 which it had reduced to $61,000 and which was evidenced by notes bearing 6 per cent. interest. It was unable to pay this amount out of current revenue without interfering with the maintenance of the schools and it resolved to issue bonds for $50,000 thereof, running through a designated period of time and bearing a lower rate of interest than the outstanding notes. King, a taxpayer, filed his bill in equity against the board and sought (1) to put the defendant upon proof that the indebtedness was valid; and [if it be found valid] (2) to restrain defendant from evidencing it except by notes (its present form) and from issuing bonds and from paying the indebtedness in any way other than at such time or times as it had funds available. The defendant demurred. The circuit court sustained the demurrer, denied the injunction, and adjudged the floating indebtedness to be a valid and binding obligation of the board, and *"that it could lawfully fund it by issuing the contemplated bonds."* (Italics ours.) Plaintiff appealed. It is manifest from the opinion of the Court of Appeals that it considered that "the real question in the cause" was whether the board had power to issue the bonds. It deliberately passed the question whether the order sustaining the demurrer, being interlocutory, was appealable. It said:

"But, inasmuch as the nature of the proceeding partakes largely of the elements of a declaratory judgment action, and to preserve the harmony that has prevailed throughout the pendency of the cause, we have concluded to waive that question of practice and *to determine the sufficiency of the petition.*" (Italics ours.)

It then proceeded to reverse the circuit court upon the first point on the ground that the petition was insufficient in that it stated conclusions of law as distinguished from allegations of fact, *but affirmed the judgment in all other respects.*

If it did not otherwise appear, we are bound to presume that the affirmance embodied the deliberate judgment of the court. Cross v. Allen, 141 U. S. 528, 539, 12 S. Ct. 67, 35 L. Ed. 843. The judgment affirmed was rendered upon a controverted question of law raised by demurrer, and we are constrained to regard it as an authoritative declaration of the state of the law in Kentucky at the time the bonds involved herein were issued and sold.

Appellee cites subsequent decisions to the contrary upon causes arising after that time, among them Hockensmith v. County Board of Education, 240 Ky. 76, 41 S.W. (2d) 656, Allen County Fiscal Court v. Allen County Board of Education, 242 Ky. 546, 46 S.W.(2d) 1070, and Downey v. Board of Education of Logan County, 243 Ky. 66, 47 S.W.(2d) 931. These cases are not controlling since they affect future transactions only. Gelpcke et al. v. City of Dubuque, 1 Wall. 175, 206, 17 L. Ed. 520.

Prior to 1908, each county in Kentucky was divided into school districts, each of which was governed by a board of trustees, and each of which was a "taxing district or other municipality" within the meaning of section 157 of the Constitution. See Scobee v. Clark County, 157 Ky. 510, 513, 163 S. W. 472. In 1908 the trustee system was abolished and a single school district, coextensive with the county and supervised by a county board of education, was established. Under the act of 1908 (Acts 1908, c. 56) it became the duty of the board of education to make up a budget of the educational needs of the county and to lay the same before the fiscal court of the county, and under the same statute it was made mandatory upon the court to levy a tax to meet that budget provided it did not exceed certain statutory limits. In 1920 the school system was again changed, but the new act (Acts Ky. 1920, c. 36) did not substantially change the duty of the board to present an estimate of the school expenses to the fiscal court, and the fiscal court's duty within statutory limits to levy a tax to meet them remained unchanged. The history of this legislation is found in Breathitt County Board of Education v. Breathitt County Fiscal Court, 188 Ky. 674, 223 S. W. 830, Fiscal Court of Cumberland County v. Board of Education, 191 Ky. 263, 230 S. W. 57, and Breathitt County Fiscal Court v.

Breathitt County Board of Education, 191 Ky. 437, 230 S. W. 914. From these cases, taken in connection with the case of King v. Christian County Board of Education, supra, we think it evident that at the time the bonds herein involved were issued and sold, the law of Kentucky regarded a county board of education as a "taxing district or other municipality" within the meaning of sections 157 and 158 of the Kentucky Constitution. See, also, Waller v. Georgetown Board of Education, 209 Ky. 726, 273 S. W. 498, and Whitworth v. Breckenridge County Board of Education, 225 Ky. 222, 7 S.W.(2d) 1070.

The purchasers, after seeking the advice of learned counsel, bought the bonds in reliance upon the Christian County Case and we cannot agree with the finding of the District Court that they were unjustified.

Of course, if the indebtedness sought to be funded by the bonds was unauthorized, i. e., if it was created in "an amount exceeding in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose," it was void (section 157 of the Kentucky Constitution) and could not be funded. But the mere existence of the indebtedness does not raise the presumption that it was illegal. On the contrary, it would be presumed that in the creation of the debts the board acted lawfully. Apart from the question of power, it is uncontradicted that the debts represented lawful expenditures. Appellee raised and relied upon the defense of invalidity and necessarily carried the burden of establishing it. Fiscal Court of Pendleton County v. Pendleton County Board of Education, 240 Ky. 589, 42 S.W.(2d) 885. But it has failed to show what debts were merged into the notes which were paid from the proceeds of the bonds or in what years they were contracted. The indications are that expenditures began to exceed income as early as 1919. Appellee has failed to show with any degree of certainty just what tax rate was levied for each separate year or whether a higher tax rate than that actually levied was unauthorized, a situation which would differentiate the case from Vaughn v. City of Corbin, supra. It likewise failed to show that causes other than losses of anticipated revenue produced the deficit. See Tarter, Judge, v. Wesley, 200 Ky. 14, 17, 252 S. W. 109.

Upon the assumption that the board had the power to issue the bonds, we disagree with the view of the District Court that appellee was not estopped to assert the validity of the indebtedness from which they arose.

The resolution adopted by the board of education by which the bonds were authorized, recited in substance: That between the years 1919 and 1929 it had accumulated a deficiency of $16,000 due to delinquencies and losses in taxes levied; that during those years it was obligated to pay the usual costs of running the schools, teachers' salaries in excess of its minimum of $75 per month and in accordance with state board of education salary schedules, and tuitions of its students attending other district schools; that it had to borrow to meet these costs and that evidences of debt in the amount of $16,000 were outstanding against it; that but for the losses in revenue from the amount provided there would have been ample funds to meet the expenses without borrowing; that it cannot liquidate the indebtedness in one year without crippling the operation of the schools; that the $16,000 floating indebtedness, bearing 6 per cent., is a valid obligation of the board and that it may be more economically handled by funding it into an obligation bearing 5¾ per cent. which may be paid in small amounts over a series of years; that the assessed value of the property of the District is such that the $16,000 indebtedness plus other indebtedness existing against it will be less than 2 per cent. of the assessed valuation.

Whereupon the board resolved and ordered that the bonds previously described be issued, prescribing their form, one paragraph of which is as follows:

"It is hereby certified and recited that all acts, conditions and things necessary to be done precedent to and in the issuance of this bond in order to make it a legal, valid and binding obligation of said County School District and of said Whitley County Board of Education, have been done, have happened and been performed in regular and due form as required by law; that the full faith, credit and revenues of said County School District and of said Whitley County Board of Education are hereby irrevocably pledged for the prompt payment of the principal and interest hereof at maturity; that no limitation of indebtedness or taxation, either constitutional or statu-

tory, has been exceeded in issuing this bond, and that due provision has been made by the Fiscal Court and by the Board of Education of Whitley County respectively for the levy and collection annually by taxation of an amount sufficient to pay the interest and to provide a sinking fund for the final redemption of this bond at maturity."

While the board was not estopped from asserting that the bonds were issued without constitutional or legislative sanction, it could not go beyond this point and repudiate the recital of its resolution, copied into the bonds, that the conditions precedent to their issuance had been duly and formally fulfilled. Henderson County, Tenn. v. Sov. Camp, W. O. W., 12 F.(2d) 883 (C. C. A. 6).

The decree is reversed and the cause remanded for further proceedings consistent herewith.