## Rose v. Elliott County et al.

(Decided Feb. 21, 1936.)

CHESLEY A. LYCAN for appellant.

S. S. WILLIS, M. M. REDWINE and ELDRED E. ADAMS for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming in part and reversing in part.

Appellant, a citizen and taxpayer, who was made defendant to a petition filed by appellee, the fiscal court of Elliott county, appeals from a judgment of the Elliott circuit court holding valid a proposed issue of $50,000 of bonds.

The petition pleads, and certified copies of judgments against the county are filed, to the amount of approximately $50,000. To this petition the appellant demurred. The court overruled the demurrer and without further pleading, the cause was submitted and the court rendered judgment declaring the proposed issue valid, and said:

"It further appearing from the allegations of the petition herein, and the exhibits thereto annexed, and the proof heard by the court, that the proposed bond issue is necessary to fund existing debts that have been duly adjudicated and that same does not exceed the limits provided by the Constitution and that the judgments to be funded

constitute all floating indebtedness of the County of Elliott, * * * the bond issue is directed."

Taking up the petition, we find it alleged that the assessed valuation of all taxable property in Elliott county, as of July 1, 1935, was $1,200,000 (shown by proof to be $20,807 greater); that the county is indebted to the extent of approximately $50,000, evidenced by judgments which are set out, showing persons in whose favor rendered, amounts and dates, and "that each of these judgments is in full force and effect," and constitutes a valid and subsisting obligation of the county; that said county is unable to pay the same out of its regular levy, and the total of the judgments together with an outstanding voted bonded indebtedness of $22,000, less $4,756.20 in the sinking fund for the payment of interest, and retirement of the bonds, constitutes all indebtedness of the county.

The only proof adduced, other than the copies of judgments, was as to the property valuation for the year 1935, as above set out, an dthat the judgments set up are all the debts against the county, except an approximate debt of $3,000, represented by warrants, mainly for "election officers and vital statistics." The witness also verified the allegation of the petition as to the existing bonded indebtedness, the amount in the sinking fund, and stated that there had been no default on the bonds; the next maturity to be in 1937, and the sinking fund would take care of that. Being asked, "Is your present income sufficient to take care of your current expenses?" witness answered, "I think it is."

For the purpose of testing the soundness of the court's adjudication declaring the issue valid, it is only necessary for us to have regard for sections 186c-6 and 186c-7 of Kentucky Statutes Supp. 1933, chapter 22, Session Acts of 1932, and such cases as have been decided by this court construing that statute.

There appear to be two classes of these municipal bond issue cases, construing the statute since the enactment thereof. In one class judgments had not been rendered on claims against the county, but in which ample proof was or was not offered, and another in which judgments had been rendered and which judgments were held sufficient. In the first class are Fox

v. Boyle County, 245 Ky. 27, 31, 53 S. W. (2d) 192, 194; Coil et al. v. Ham et al., 260 Ky. 650, 86 S. W. (2d) 529; Stratton v. Jessamine County, 257 Ky. 302, 77 S. W. (2d) 955, 956; Randolph v. Shelby County, 257 Ky. 297, 77 S. W. (2d) 961; Ochs v. Spencer County, 261 Ky. 692, 88 S. W. (2d) 700, and Bartlett v. City of Winchester, 261 Ky. 694, 88 S. W. (2d) 698.

Of the other class there are Stratton v. Jessamine County, 260 Ky. 754, 86 S. W. (2d) 984; Randolph v. Shelby County, 259 Ky. 79, 82 S. W. (2d) 188; Elliott v. Fiscal Court Pike County, 237 Ky. 797, 36 S. W. (2d) 619.

It is not necessary to go into a lengthy discussion of the above-cited cases, but upon reading them it will be observed that this court gave the statute a clear and definite analysis, and, we may say, liberal construction, yet leaving no room for doubt as to the purpose, meaning, and effect thereof.

It is clear that the Legislature in adopting, and this court in construing the act supra intended that it should be followed in every respect. In the Fox Case, supra, and in the first Randolph Case, we held that the proposed bond issue must be approved by a court of competent jurisdiction; that the items of outstanding indebtedness created or existing during the pariod in which the debts were incurred and intended to be covered, must be specifically set forth, and said:

"Under the new statute, the approval of the court cannot be obtained unless the facts affecting the constitutional validity of the proposed bond issue are presented."

The purpose and effect of the statute was set forth in the first Stratton Case as follows:

"The sections of the Statutes, supra, were enacted in order to curb a reckless disposition on the part of some fiscal courts of the various counties of the commonwealth, and to further guarantee that they confine the expenditures of their counties within constitutional bounds, and nothing less than a good faith substantial compliance therewith should be approved."

In the same case, we also said:

"In order for such items of expenditure to be valid two facts must concur, i. e., (a) that the purpose for which the expenditure was agreed to be made was an obligation that the county had the right to assume and perform, and (b) that each particular expenditure, at the time the county assumed it and became obligated therefor, did not exceed the revenue provided for the year in which the obligation was incurred."

As will be observed by a reading of the statute and the cases, supra, the reader cannot escape the conclusion that the Legislature realized the wisdom of such a statute, and the court, recognizing fully its purpose and effect, gave these cases the closest scrutiny so as to determine whether or not there had been a substantial compliance with the statute.

However, this situation appears here. We have before us the petition to which is attached certified copies of the judgments rendered by a court testing the validity of claims representing indebtedness covering a period of years by no means fixed, either in the pleadings or proof, and which judgments or copies constituted the whole proof introduced in the bond issue case, except as above noted.

We have looked carefully into the record in this case and find some of the judgments pleaded show on their faces that the question of the validity of the claims embraced therein are not adjudications of their validity and since those bearing evidence of defect were introduced as proof, we may look to them as tendered proof to determine whether or not there has been substantial compliance with the statute, or to see if there was any proof to support the chancellor's finding.

There were four judgments rendered against the county during periods from March 16, 1932, to and including March 15, 1934, totaling approximately $16,-700 (not including interest). Some judgments which go toward making up the total of the $50,000 involved in the bond issue case, and which seem to have been rendered October 5, 1935, just a few days before the meeting of the fiscal court which ordered the bond issues, are as follows:

(a) By agreement of parties a judgment against the county for $4,513.81, with interest and costs.

(b) Judgment by agreement of parties, $6,532.90, with interest and costs.

(c) On same date by agreement of parties a judgment for $2,709.20, interest and costs.

(d) Here eight cases were consolidated and submitted on pleadings and exhibits filed. The greater amounts involved were $607.84, $361.66, $407.71, and one for $2,733, while the others ranged in amounts from $6 to $27.60.

(e) Here judgment was rendered for a total amount exceeding $9,000 on the petition of "a trustee, etc.," submitted "in vacation upon pleadings and exhibits filed," wherein it was adjudged that all of the claims sued on were valid, subsisting demands against the defendant Elliott county, and were incurred for the necessary cost of administration of the fiscal affairs of the county. In looking over this judgment, we find that, perhaps, four of the claims exceed in amount $1,000, twelve or more exceed $50 and the remainder, twenty-two or twenty-three, are less than $50, ranging from $1.50 to $10.

It is shown by the judgments indicated above by letters that the court in rendering them continued the cases on the docket in order to try out the question as to whether or not the claims were or not for governmental expenses of the county; their nature; their preference and priority; the dignity of the claims; and in (d) and (e) the court, in addition, reserved for determination the questions as to consolidation.

None of these judgments therefore have the efficacy of final adjudications. It seems that the very questions which the statute so plainly requires to be adjudicated on pleadings and proof are left open, and we have no hesitancy in concluding that these matters were not nor could they have been determined or adjudicated in the case involving the bond issue in the absence of proof offered in the respects required by the statute. The judgments filed as exhibits show that there was and is doubt as to the validity of the claims. The lower court has yet to determine whether the claims were for necessary governmental purposes or

for indebtedness not coming within that class. The claims not having been adjudged for necessary governmental purposes, their validity would depend on many other facts, circumstances, or conditions necessary to be proven, either in the case in which the judgment was rendered, or in the case declaring on the proposed bond issue.

The procedure here does not measure up to what would constitute, as heretofore expressed, our idea of a substantial compliance with the statute. The lower court in the bond issue case did not have before it sufficient, or what we deem sufficient, proof to permit it to determine the validity of the proposed bond issue in the light of the statute here involved.

The first four judgments mentioned above, totaling approximately $16,700 (plus what interest may be due), are not subject to the objection and criticism expressed as to the remainder of the judgments, and in view of this fact, we see no reason why we should not, on the authority of the second Randolph and Stratton cases, approve the judgment of the lower court to the extent of the sum named (with interest), and to this extent it is approved and affirmed, and the court below may enter judgment authorizing bonds to the amount indicated. But in other respects the judgment is reversed and remanded for judgment in accord herewith, or (as was ordered in the first Randolph and Stratton Cases), upon remand, the appellee may, if it so desires and can, take further proceedings.

Reversed in part, and affirmed in part.

Whole court sitting.