## Hill v. City of Covington.

(Decided June 5, 1936.)

ALFRED P. LEWIS and ALFRED HOLMAN for appellant.
RALPH P. RICH for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This action is a proceeding instituted in the Kenton circuit court by the city of Covington against one of its citizens and taxpayers, as the representative of himself and all other taxpayers of the city, pursuant to the provisions of sections 186c-6 to and including 186c-8 of the 1933 Baldwin's Supplement to Carroll's Kentucky Statutes, and which sections were enacted in chapter 22 of the Session Acts of 1932. It sought the approval of the court to the issuing of funding bonds of the city to take up an aggregate amount of its floating indebtedness in the total sum of $395,000. The amount so sought to be funded was composed of deficits in the collection of the city's revenue beginning at the end of its fiscal year 1931, and recurring in each successive year thereafter to and including the fiscal year of 1935. None of the items of the amount sought to be funded was attempted to be established by a judgment of a court, and therefore, the 1936 amendment to chapter 22 of the 1932 acts has no application to the case. The action was practiced in a manner to show a bona fide effort on the part of every one concerned to present to the court the true situation. No concealed element of collusion appears in the case and the proof adduced conclusively shows the facts to be as hereinafter recited. The trial court approved the issue, followed by this appeal by defendant.

Under section 157 of our Constitution, the city of Covington, being one of the second class, is given the right to levy and collect a maximum tax rate each year of $1.50 on each $100 of the assessed property within its limits, but in neither of the years involved was that maximum rate levied. However, a budget at the beginning of each fiscal year was made out by the city authorities and a tax rate within the constitutional limit was levied for each of those years, which, if collected, would have realized enough revenue to meet the expenses of the city for that year as set forth in the prepared budget. But the effects of the financial depression prevailing throughout the country caused a much greater deficit in the collection of the taxes for each year than was anticipated by the city authorities when both the budget and the levies for the year were made. Notwithstanding that situation, the proof clearly established that no item of the accumulated indebtedness, singly or in connection

with all others made for the same year, exceeded the revenue that could have been produced had the maximum constitutional rate been levied.

After prescribing the maximum rates of taxation as set forth in the first part of section 157 of the Constitution, there is inserted therein these independent clauses and sentences: "No county, city, town, taxing district, or other municipality, shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforceable by the person with whom made; nor shall such municipality ever be authorized to assume the same." In the cases of City of Providence v. Providence Electric Light Co., 122 Ky. 237, 91 S. W. 664, 28 Ky. Law Rep. 1015; Lawrence County v. Lawrence Fiscal Court, 130 Ky. 587, 113 S. W. 824; Pulaski County v. Richardson, 225 Ky. 556, 9 S. W. (2d) 523, and perhaps in others since the last one, we construed the inserted limitation in the excerpt from section 157 of the Constitution as authorizing and permitting the creation of an indebtedness each year by such subordinate divisions of the state government in the aggregate amount of what the maximum levy prescribed in the first part of that section would have produced if levied and collected. It is, therefore, clear that under that interpretation, and under the proof showing that the indebtedness here involved in each year's accumulations was within the amount that could have and would have been raised had the maximum levy been made, all of it was valid when created.

But appellant's learned counsel insist that the city of Covington is prohibited from expending or incurring indebtedness in any amount in excess of what the actual levy would produce in any one year by the provisions of sections 3069 and 4281u-4 of the 1930 Edition of Carroll's Kentucky Statutes. The first one (3069) is a part of the charter for cities of the second class to which the city of Covington belongs, while the other one (4281u-4) was and is a part of a general law enacted by chapter 81, page 352, of the Session Acts of 1906 relating to levy of tax for and expenditure of public funds.

Section 3069 says, in part: "The general council shall not expend any money in excess of the amount annually levied, collected or appropriated for any special object." Following language prescribes that "if, in any year, the general council shall deem it necessary to incur any indebtedness, the payment of which cannot be met without exceeding the income and revenue provided for the city for that particular year," it shall provide by an ordinance, for the holding of an election by the people to determine whether or not such excess indebtedness shall be created. Section 4281u-4, referred to, expressly prescribes that no county, municipality, or other taxing district in the commonwealth "shall expend any money in excess of the amount annually levied and collected for that year," and makes it a misdemeanor for the legislative or managing body of such public institutions to create indebtedness or to make expenditures in excess of what might be produced by the levy as actually made.

The two sections referred to manifest a clear purpose on the part of the Legislature to limit the right of such subordinate governmental agencies, to which they apply, to expend or create indebtedness in any year beyond an amount that the actual rate levied for the same year would produce if collected, and, in the absence of the interpretation made in the City of Providence Case, supra, and others following it, the contention of counsel for appellant would undoubtedly prevail. But the interpretation of section 157 made in those cases becomes a part of it as effectually (during the period that such interpretation prevails) as if it had been written into the section. It is, therefore, incompetent for the Legislature to attempt to legislate contrary to that interpretation, and which effectually disposes of the defense referred to.

But the same learned counsel further insists that under the provisions of sections 3077 and 3088 (each of which are also parts of the charter of cities of the second class) the city of Covington is forbidden the right to issue its bonds to fund floating indebtedness, since the first one (3077) makes provision for the issuing of such bonds (providing the floating indebtedness is valid) for the purpose of funding "floating debts existing under contracts at the date of the passage of this act"; while the second one (3088) prescribes for the issuing of such bonds to fund floating indebtedness existing at the date

of the adoption of our Constitution. It is, therefore, argued from those provisions that none of the indebtedness involved in this case comes within the purview of either of those two sections, since each of them relates to past indebtedness and (by implication) denies the right of the municipality to issue bonds to take up floating indebtedness, of future creation or of any other character than that referred to in them, and that, since the indebtedness involved in this action is not embraced by either of those sections, the city of Covington has no right to issue the bonds herein sought to be approved.

But such contention and argument of counsel (as applied to the later created floating indebtedness) is again successfully met and answered by our interpretation of the last sentence in section 158 of our Constitution. It prescribes limitations of indebtedness of municipalities and taxing districts in this commonwealth and makes provision for the issuance of bonds by them. The last sentence therein says: "Nothing herein shall prevent the issue of renewal bonds, or bonds to fund the floating indebtedness of any city, town, county, taxing district or other municipality." In the cases of Vaughn v. City of Corbin, 217 Ky. 521, 289 S. W. 1104, 1105; Baker v. Rockcastle County Court, 225 Ky. 99, 7 S. W. (2d) 846; Hogan v. Lee Fiscal Court, 235 Ky. 100, 29 S. W. (2d) 611; City of Frankfort v. Fuss, 235 Ky. 143, 29 S. W. (2d) 603; Elliott v. Fiscal Court of Pike County, 237 Ky. 797, 36 S. W. (2d) 619; and Hall v. Fiscal Court of Fleming County, 239 Ky. 425, 39 S. W. (2d) 656, the inserted language from section 158 of the Constitution was construed as embracing and referring to any floating indebtedness of a city, town, county, or taxing district, whether created before the adoption of our present Constitution or created thereafter, and that when the total amount for each year did not exceed the limitations (as interpreted, supra) contained in section 157 of the Constitution, the bonds of the taxing subdivision agencies of government might be issued without an election of the people. That interpretation likewise became a part of that section of the Constitution (158), and like the one hereinbefore referred to with reference to section 157, it is as binding and effectual, as long as such interpretation exists, as though it had been written into section 158. It is, therefore, incompetent for the Legislature to attempt to enact otherwise. Hence, if the provisions of

sections 3077 and 3088, so relied on by counsel for appellant, were also prospective so as to embrace all future contracted floating indebtedness instead of being confined to that existing at the respective specified times therein mentioned, the defense could not prevail in this case because the attempted limitation would be in direct conflict with the self-executing provisions of the two sections of our Constitution, it having also been declared by this court that they are self-executing. It, therefore, follows that the court properly approved the issuing of the bonds.

The writer disagrees with the interpretations, supra, of the inserted provisions of sections 157 and 158 referred to, and has done so throughout his tenure of service as a member of this court. Others have agreed with him and some of them do so yet, but a majority of the members of the court (and in this case every one but the writer) are of the opinion that a correct application of the stare decisis doctrine prevents a reconsideration of those interpretations and that they, as a part of the sections so interpreted, should continue until and unless corrected by amendments duly adopted.

It is not considered amiss for the writer to briefly state his reasons for disagreeing with the interpretations referred to. They are (a) that according to his conception each of them is in direct conflict with the language employed by the members of the constitutional convention in framing the two involved sections, and (b) that if the language was less plain, the interpretations thwart and destroy the undoubted purpose and intention of the Constitution makers, which was to erect a curb against extravagant and unlimited expenditures of the public revenues of such subordinate taxing agencies and to fix a limit beyond which such expenditures, and the creation of indebtedness would not be tolerated. Experience, gathered from all past history, had taught the lesson that, unless such limitations were prescribed in the fundamental charter of the state, whereby it would be placed beyond the power of the Legislature to alter, such public governmental subdivisions would eventually become burdened, not only with intolerable rates of taxation, but also with unbearable debts. Hence, section 157, after prescribing the maximum limit of rate of taxation for each class of taxing agencies, then declared (as the writer concludes) that notwithstanding such max-

imum limitations, no expenditures should be made or debts created beyond that which such agencies through their legislative or managing officers might provide within the constitutional maximum limitations. In other words, that the word "provided" as contained in the excerpt, supra, from section 157 refers and relates to the method of raising revenue for such taxing agencies that might be employed by such governing authorities and that it does not refer to the preceding maximum limitation contained in that section. Under the interpretation of the court, beginning with the City of Providence Case, supra, with reference to the subject in hand, there would have been no necessity whatever in incorporating any of the language in section 157 which we have hereinbefore inserted therefrom, since if the maximum prescribed rate was itself a limitation of the power and authority of such taxing agents to expend the public funds and create debts, as the interpretation holds, then all of the following language is pure surplusage.

With reference to the interpretation of the language inserted from section 158, it is perfectly plain to the mind of the writer that the provision for bonds to fund floating indebtedness as therein employed refers only to such indebtedness as existed and was contracted before the adoption of the Constitution; otherwise, the limitations contained in that section as to the amount of bonded indebtedness up to prescribed percentages of taxable property within the taxing district, even by a vote of the people, became practically, if not entirely, useless under the intrepretation given by the Corbin Case, supra, and others following it. The two interpretations operating together have thrown wide the doors to most extravagant dissipation of the public funds, resulting in almost unheard of burdensome debts with which almost every subordinate agency of the state government now finds itself encumbered, and without power in either the Legislature or the courts to prevent a continuation thereof. So that the way is now open for each taxing district to actually levy a nominal rate of taxation and to then expend an amount equal to that which would be produced by levying the maximum rate of taxation, thus creating an indebtedness of the difference between the amount levied and that which could have been levied. After such debts have become sufficiently pyramided, then, under the interpretation given to the in-

serted language from section 158, the total amount may be funded by the issuing of bonds ad infinitum, and thus each taxing district will become plastered with recurring bond issues until, possibly, the aggregate indebtedness will equal or exceed the entire valuation of the property within the taxing district. It is for such reasons and upon such grounds that the writer has heretofore and yet disagrees with those interpretations.

The writer is likewise of the opinion that the necessitous emergency for curtailing such possibilities furnishes sufficient justification to not allow the application of the stare decisis doctrine to interfere, and that the cases wherein such interpretations were promulgated should be overruled, but with the express declaration in the overruling opinion that all contracts and obligations heretofore entered into pursuant thereto, and before the overruling opinion becomes final, should be treated as valid and binding and that the overruling opinion would have a prospective effect only. However, such effect would follow, even without a declaration made to that effect, in the overruling opinion, as was held by us in the case of Oliver Company v. Louisville Realty Co., 156 Ky. 628, 161 S. W. 570, 51 L. R. A. (N. S.) 293, Ann. Cas. 1915 C, 565. Such, in brief, embodies the position of the writer, but he submissively bows to the opinion of the majority of his fellow members of the court.

Wherefore, for the reasons stated, the judgment is affirmed.

The whole court sitting.