## Root et al. v. City of Newport.

(Decided May 20, 1938.)

LEONARD TEICHMOELLER for appellants.

CARL H. EBERT, WALTER J. BURKE and WILLIAM J. HERINGER for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

This suit was brought below by appellee seeking to have the court pass upon the question of the validity of an ordinance duly passed on April 16, 1938, by which the proper city authorities resolved to issue funding bonds to the amount of $260,000 for the purpose of liquidating a floating indebtedness of the city totaling $279,171.62, but of which sum the court found a portion had been paid, or arrangements made to pay, to the amount of $19,171.62. The bonds proposed to be issued were to mature over a period of twenty years, and to bear interest at the rate of $3\frac{1}{4}$ per cent., payable semi-annually. It is developed that the floating indebtedness is bearing a rate of $4\frac{1}{2}$ per cent., with a possibility that such rate may be increased to 6 per cent. in case the claims be reduced to judgments.

Appellant was called upon to answer on behalf of himself and other citizens and taxpayers, and did so, setting up the defense usually presented in this class of cases, claiming that the indebtedness was not valid, and that under section 158 of the Constitution, and certain sections of the statute, relating mainly to cities of the second class, to which class the appellee belongs, the municipality was powerless to issue funding bonds under the situation presented.

The court below found the indebtedness, to the extent above indicated, to be valid and held that the city could legally issue the bonds, his finding based upon proof which seems to us to have justified his conclusions, as manifested in numerous similar cases decided by this court. From such judgment the taxpayer has prosecuted this appeal.

From the pleadings it is learned that as of April 1, 1938, the city had an outstanding indebtedness of $149,-

171.62, made up of approved unpaid legitimate claims for governmental expenses, and a note due to a bank for $140,000, which had been executed for money borrowed for municipal operating and governmental expenses.

It is not necessary to set out the allegations of the petition in detail. It is sufficient to say they were borne out by the proof. The indebtedness sought to be bonded accumulated in the years 1936 and 1937. In the first year the tax rate was $1.30; in 1937, $1.40, with a taxable valuation of approximately $25,000,000, each year. The anticipated revenue for 1936 was approximately $657,000, of which $543,873.46 was allocated for governmental departments, exclusive of the sinking fund. There was a deficit that year of about $40,000 in failure of tax collections. Water rent collections failed to the extent of more than $39,000. Fifty thousand dollars more might have been realized in the two years had the maximum constitutional rate been levied. In 1937, with the tax rate $1.40, plus, tax delinquencies ran to $94,125.56; the loss in water rent receipts were as in 1936.

In 1937 the anticipated revenue was $698,740.07, of which $610,841.42 was for governmental expenses, exclusive of the amount set apart to the sinking fund. In the early part of that year the city streets, sewers, and water plant suffered great injury, due to the flood, and the city was required to repair streets, sewers, and its water system and plant, to the extent of an expenditure of approximately $140,000, which was unanticipated, and necessarily far exceeded its outlay for the purposes for the year 1937. This accounts for about 50 per cent. or more of the deficit for the two years. Whether this has all been paid, or is included in the list of unpaid claims, is not shown, nor are we concerned about this, since whichever plan was adopted, "is a matter within the business judgment of the fiscal court, and we are concerned simply with the question of the validity of the debt sought to be funded." Gardner v. Franklin Co., 273 Ky. 494, — S. W. (2d) —.

It was shown by the pleading and proof that the debts contracted during the years in question were such as are properly considered governmental obligations of the municipality; that the contracted debts for neither of the years involved exceeded the revenues for that

year, as we have heretofore construed "revenues." Hill v. City of Covington, 264 Ky. 618, 95 S. W. (2d) 278; Matz v. Newport, 265 Ky. 126, 95 S. W. (2d) 1071; Nourse v. Russellville, 265 Ky. 96, 95 S. W. (2d) 1096; Booth v. Carrollton, 272 Ky. 250, 114 S. W. (2d) 93, and cases cited.

It is shown that the city has duly regarded the finances of the municipality, though there is some criticism, perhaps justly made, of failures, or neglect in collections of revenues and water rents, without a showing of what portion of those, if any, might have been collected.

There appear facts in the proof which show evidences of good faith, and effort to better regard the finances during the year 1938. The tax rate has been increased to within 5 cents of the limit. Water rents have been appreciably increased. There has been budgeted for general operation during 1938 approximately less, by the amount of the proposed bond issue; allocations have been made on an estimated 80 per cent. collection, and considerable reduction in the water system budget. This readjustment, the city manager testified, will allow the meeting of current expenses fully, and without creating any new indebtedness.

The procedure was in conformity, and the proof appears to have been in compliance, with the provisions of section 186c-6, et seq., Kentucky Statutes. The suit was prosecuted in form, as provided by section 639a-1, et seq., Civil Code of Practice, the Declaratory Judgment Law. The court declared the items making up the total of the floating indebtedness to be valid as against the municipality, and that its funding, in the manner adjudged, did not violate any statutory or constitutional provisions. In his conclusions we concur.

Judgment affirmed.