## Elliott County et al. v. Duvall et al.

May 30, 1941.

842

Eldred E. Adams and John A. Keck for appellants.

Hannah, Vansant & McKenzie for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

This case is no stranger, since the matters here were to an extent involved in Rose v. Elliott County, 262 Ky. 768, 91 S. W. (2d) 60, and Duvall's Adm'x. v. Elliott County, 275 Ky. 85, 120 S. W. (2d) 782, 783. A reference to those cases will give the facts which lead up to the judgment from which Elliott County prosecutes this appeal. The judgments here considered were not properly proved in the bond issue case. Rose v. Elliott County, supra.

In the Duvall's Adm'x. v. Elliott County case, supra, the administratrix later filed action in which she sought direct relief on her judgment. She set out the financial condition of the county for the years 1937-38, and such allegations as are mentioned in the opinion, and sought a mandatory order directing the proper officers of the county to "levy a tax, and provide for the payment of plaintiff's judgment * * * same (to) be included in the budget for the present year." The county officials demurred and answered, and not denying the existence of the judgment or the validity of the indebtedness, denied other material allegations, and alleged that there were other claims of equal rank with plaintiffs.

They also asserted that the budget for 1938 had been prepared and properly approved, and that revenues for that year were apportioned and allocated to the payment of governmental expenses, and it had no other revenue or means of paying plaintiff's claim.

It was shown in their pleading that they had sold $16,000 of funding bonds, and levied a fifteen cent tax to pay interest and retire same. This matter was then in the courts, and it was argued that if the court held the issue valid, then they could only make a 35 cent levy for other purposes. The court overruled plaintiff's ·demurrer to the answer, and declining to plead the court dismissed her petition. On her appeal to this court we reversed and remanded for further proceedings.

In passing on the question we held that appellees' claim was not then one to be classed as "necessary governmental expenses," but as a part of floating indebtedness, *reduced to judgment.* Perry County v. Kentucky River Coal Corp., 268 Ky. 78, 103 S. W. (2d) 689. We said: "In this state of case the county owes it to the creditor to adopt some legal means to pay this indebtedness."

We found that the pleadings of neither party showed whether or not a levy of tax, sufficient to meet the obligation, could be made in the face of sec. 157 of the Constitution, and indicated that even though the claim be reduced to judgment, the fact would not authorize the county levy a tax in excess of the constitutional limit to pay the claim, but that the creditor's rights were to be exercised in subordination to sec. 157 of the Constitution, citing Landrum v. Ingram, et al., 274 Ky. 736, 120 S. W. (2d) 393, and others of like import.

We held that appellant was entitled to some relief, and though

"it may be that the fiscal court could not approve the claim to be included in the budget for the present year (Noble v. Combs, 273 Ky. 578, 117 S. W. (2d) 579) [but] she was entitled to have the court grant such relief as may have appeared proper, and as indicated in the opinions cited supra."

The mandate went back to the Elliott court in February, 1939. The mandate in the case involving the

Greene judgment had theretofore been filed. It was agreed by the parties that the Greene and Duvall cases should be heard together, and that the pleadings in the Duvall case, as well as motions, orders and rulings should be considered in the Greene case; and in the Duvall case the administratrix filed a reply to the answer which had theretofore been interposed by the county officers.

In this pleading she denied that the current revenue for the current year (1939), had been appropriated or allocated to the payment of governmental expenses, or that the county had no revenue or available means of paying her judgment debt. (2) That the funding bonds, mentioned in the action of Bank of Blaine v. Elliott County, referred to in paragraph 3 of the answer, were void, and could not be legally issued or assumed. We assume that this may mean that there was, or should be, no levy of fifteen cents to meet the bond issue, and that therefore the county could apply the full fifty cent levy. This issue was settled in Rose v. Elliott County case. In her reply administratrix prayed as in her petition, which, as stated above, was to have the proper officers meet and levy a tax to provide payment of her claim, and to include it in the budget for that fiscal year. The county did not amend its answer or plead to the reply.

The court, upon submission, recited the facts in both cases, and found from the records that there were

"other outstanding warrants for governmental expenses, unpaid, against Elliott County, and together with judgments (some not for governmental expenses) amounted to approximately $50,000, of which $16,000 has been funded and bonds sold in that amount, and that a fifteen cent levy had been made to pay interest and retire these bonds, thus leaving 35 cents on the $100 for county purposes; that the anticipated revenue on assessment of property in Elliott County is approximately $9,000, and actual collection, $7,000 to $8,000."

The court then adjudged that the claims of plaintiff and Mollie Greene

"are each for governmental expenses of Elliott County and preference claims against the county,

and that said amounts shall be paid by the treasurer of Elliott County out of funds derived from its county levy, to be paid pro rata with outstanding warrants of other persons holding unpaid governmental claims of like nature, and when presented to the treasurer for payment these amounts shall be paid out of any excess remaining of the county levy in each succeeding year after current governmental expenses of such year have been paid, and before any outstanding or current non-governmental expenses are paid.''

The judgment directed the Budget Commissioners in making their annual estimate of the necessary expenses for the fiscal year 1940-41 to include the two judgment sums with interest, and

''such other governmental claims unpaid, as may be presented to them, and include same, or the unpaid portion thereof, in each succeeding budget, until said amounts are liquidated and paid.''

To this judgment defendants excepted and were granted an appeal. A tendered judgment was corrected by agreement of parties, and the recital above contains interpolations. There is no cross-appeal by appellees.

In brief for appellants it is pointed out that this court refused to approve the Duvall and Greene debts in the Rose v. Elliott County case, supra, and it further suggested that

''Elliott County is still ready and willing to issue funding bonds for plaintiffs' indebtedness, upon the approval of same by the Court of Appeals.''

We did not refuse to ''approve'' the two judgments; we merely held that they were not properly proven so as to form the basis for a bond issue to that extent.

Counsel for appellant insists that the judgment is erroneous, because it divides the county's floating indebtedness into two classes, and gives one class preference over the other. It is argued that the effect of this decision is to divert all of the counties' revenues, in excess of current governmental expenses, to the payment of plaintiffs' debts, leaving nothing for the servicing of the county funding bonds, or the payment of creditors not having their origin as governmental claims for prior years.

We cannot follow the argument so far as it relates to servicing of the county funding bonds. The interest payments and retirement are cared for by the 15 cent levy, and this is not to be disturbed by plaintiffs' collateral attack thereupon. Nor does the judgment put these parties in the "funding bond" preferred class, since it must be that those in that preferred class will be, or are being paid out of the proceeds from the bonds. The 15 cent levy is solely for bond purposes.

Counsel contends that "all outstanding legal floating indebtedness of a county is of equal dignity, and no preference exists." But in the Duvall's Adm'x. v. Elliott County Case, we classed it as a "floating indebtedness," reduced to judgment; in Landrum v. Ingram, County Judge, 274 Ky. 736, 737, 120 S. W. (2d) 393, 394, we had a similar question, though the appeal involved only the question as to whether or not the county, as appellant had urged, could be required to levy a tax in excess of the limit provided by sec. 157 of the Constitution. We held that it could not, and while we there classed appellant's warrants as evidences of floating indebtedness, we did hold that the fiscal court could not "under the judgment here involved, validly pay any debts other than those for strictly governmental expenses," as the court here held, perhaps following the Landrum case, thus lending higher dignity to claims which had more than once been adjudged valid.

The same question arose in the case of City of Catlettsburg v. Fabric Fire Hose Co., 264 Ky. 594, 95 S. W. 285, 286, and denying the right of the court to direct the city to levy an unconstitutional tax, held that the court should have ordered the council to include the judgment in its expenditures when the succeeding annual levy is made, since the debt was a valid one, and should be paid. We said:

"The city cannot now, in view of the judgment that has been obtained against it, question the validity of the debt on the ground that it exceeded the revenue for the year in which it was incurred."

See Perry County case, supra.

So, in view of these cases, we still say that the claims represent indebtedness reduced to a judgment, and these parties are entitled to have their claims paid in the manner set out by the court in its judgment, inso-

far as these appellees are concerned. Assuredly claims based on valid indebtedness that have run the gauntlet, as have these, are entitled to have the debtor county use every effort within constitutional limits to liquidate.

Counsel contends error because claims of some persons, affected by this judgment, while necessary parties, were not brought in. This is based on that part of the judgment which apparently, according to appellant, adjudged priorities as between creditors of Elliott County "holding claims having their inception as governmental claims, and those having their inception as non-governmental claims." Creditors having non-governmental claims for prior or current years may be vitally interested, but the ruling of the court, in view of the cases cited, could not have been otherwise, had they been sought out by plaintiff and made parties. As to the bondholders, we have answered above, and further conclude that "county levy", as used in the judgment, relates solely to levy for purposes other than retiring the bonds, as the court adjudged.

The court very clearly put the plaintiffs on a pro rata basis with persons holding claims or warrants for governmental expenses, either past or current. He could have done no more nor less had holders of warrants for governmental expenses been parties. The preference of the class of holders of what may be called governmental warrants or claims, as against holders of non-governmental claims, was clearly in keeping with our opinion in the Landrum case, supra. The case presented was not such as required the court to bring in parties, as provided in sec. 28 of the Civil Code.

It is argued that the trial court had no authority to act in this case, because no commission had been issued to the special judge at the time of the entry of the judgment. One of the attorneys, Hon. R. C. Littleton, who was and is one of counsel for the county, properly noted of record the fact that he had been elected to the office of circuit judge, and had assumed office on January 1, 1940, and had the clerk notify the chief justice, and who designated Hon. W. E. O'Neal, who appeared in court (according to one order in the record) on March 13, and filed his designation as special judge, taking oath of office and heard the cases which he had been designated to hear, the two involved being

on the list. It is apparent from subsequent proceedings that this order was incorrect, though never set aside.

Following the entry of the judgment, certain matters arose in the case, and on July 17, 1940, Hon. Marcus Redwine was appointed special judge and appeared in court. The only orders entered by Judge Redwine, apparently, struck the case from the docket, first having overruled motion of defendants to set aside the O'Neal judgment of March 22, 1940. This motion of defendants was based on the lack of authority in Judge O'Neal to have theretofore entered judgment. There was nothing filed by defendants in support of the motion, it merely being stated that no commission or designation had issued empowering Judge O'Neal to act.

In the order overruling the motion it was made to appear that on March 22, 1940, the chief justice had, by telephone, designated Judge O'Neal to try the cases in question, directing him to preside on the following day, designation to follow . The nunc pro tunc order recites that Judge O'Neal appeared and made announcement of the facts as stated, "whereupon counsel agreed that Judge O'Neal should proceed to hear the cases."

The clerk did not receive the commission or designation until after the judgment was entered, but in effect there was an agreement that Judge O'Neal should preside. In the case of Feck v. Com., 264 Ky. 556, 95 S. W. (2d) 25, we held that the official acts of a special judge, under similar circumstances, could not be collaterally attacked, and where carried out in good faith, and where jurisdiction exists, the authority of the judge may be waived by failing to object promptly. We held that under the circumstances existing there (as here) constituted the judge at least a de facto officer.

Some time later and apparently at the July, 1940, term, and about August 6, 1940, plaintiffs moved the court for a rule against the members of the Budget Commission, requiring them to show cause why they should not be punished for contempt for failing to obey so much of the final order as directed them to budget for the year 1940-41, the Duvall and Greene claims. The members of the commission responded that in making the 1940-41 budget they had considered

the two judgment debts "and all other claims of like nature" presented to them as provided in the judgment. Further, that in estimating the budget for the period stated, they first took into consideration the estimated revenues for the period, estimated governmental expenses, and that the current governmental expenses estimated, were more than the estimated revenue. Therefore, they say it was impossible to include the two judgments in the county budget for the year, and thus they had complied with the judgment "as far as could legally be done."

Upon consideration the court, "after hearing evidence and arguments," held the members in contempt, and assessed a fine of $10 against each member. The order then recites:

"Whereupon the said Budget Commissioners amended their budget of date the first of July 1940, complying with the judgment and orders of the court and duly certified same as required by law, and presented to the court the record of their acts." Thus it appears to us that the only question left open is the matter of a tax levy, which obviously could not apply to the 1940-41 fiscal year.

It appears that Judge O'Neal presided at this time, and defendants, on motion for rule, objected to Judge O'Neal presiding, on the ground that he was not legally authorized to preside. There is no order ruling on this objection, and it may be assumed that the parties waived objection. However this may be, there is no appeal prosecuted from the ruling made by Judge O'Neal in the contempt proceeding, and no necessity therefor since the Budget Commission, without appealing, included the two judgment claims in the 1940-41 budget. The "statement of appeal," which was filed on motion for appeal, granted by the clerk of this court, only mentions the judgment entered at the March, 1940, term "appearing on page 27 of the transcript." In the condition the matter now stands, it only remains for the county officers to take care of these judgments in making their levy, not, however, to exceed the limits fixed by sec. 157 of the Constitution.

Judgment affirmed.